GEORGE THOMAS, The (FISH v.). See Case No. 4,813b.

---

## Case No. 5,341.

### The GEORGE T. KEMP.

[2 Lowell, 477.] [1]

District Court. D. Massachusetts. June, 1876.

MARITIME LIENS—MATERIAL-MEN—FOREIGN VESSEL—STEVEDORES.

1. A ship whose legal owner is foreign, and whose flag is foreign, is a foreign ship, so far as material-men are concerned, though the equitable owner lives in Massachusetts.
[Cited in The J. L. Pendergast, 29 Fed. 128.]

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

2. Such a ship is not within the statute of Massachusetts, requiring a record to be made of claims for supplies and repairs to vessels.

3. Therefore, a material-man in Boston has a lien on such a ship, without recording his claim.

4. A stevedore has a lien upon a foreign vessel for his services rendered at the request of the master in a case in which the vessel is to stow the cargo.
[Distinguished in The E. A. Barnard, 2 Fed. 715. Cited in The Canada, 7 Fed. 121; The Esteban de Antunano, 31 Fed. 924; The Gilbert Knapp, 37 Fed. 211; The Main, 2 C. C. A. 569, 51 Fed. 956; The Hattie Thomas, 59 Fed. 299.]

5. It seems, if services or a contract properly concern a vessel and her owners, they are maritime services, and can be sued against the owners of a domestic vessel in a court of admiralty, or in rem against a foreign vessel.
[Cited in Roberts v. The Windermere, 2 Fed. 726; The Hattie M. Bain, 20 Fed. 390; The Wivanhoe, 26 Fed. 928; The Maggie P., 32 Fed. 301; The Gilbert Knapp, 37 Fed. 213, 214; Haller v. Fox, 51 Fed. 299; The Seguranca, 58 Fed. 908.]

6. One representing a vessel to be either foreign or domestic is estopped from setting up the contrary.

7. By the general maritime law, the presence of the owner does not preclude giving credit to the vessel.
[Cited in The Mary Morgan, 28 Fed. 199.]

8. It is a question of fact whether credit is given to a vessel or her owners; the equitable ownership does not always determine the question of credit.
[See The Norman, 6 Fed. 406.]

9. The United States may have an action against a vessel for tonnage duties; it seems, they may have an action against the owner, and perhaps against the master.

Petition by a committee of the creditors of Isaac Taylor, a bankrupt, asking that the proceeds of sale of the bark George T. Kemp, remaining in the registry after paying the wages for which the vessel had been arrested, might be ordered to be paid to them as representing the creditors generally. This was resisted by the libellants, who claimed liens on the vessel. There was evidence tending to show that the vessel was actually owned by Mr. Taylor, a resident of Massachusetts, doing business in Boston; that a transfer had been made, in form, to a resident of New Zealand, in order to obtain a British register; that this was probably done to save the vessel from capture during the war of the Rebellion; that Mr. Taylor remained the true owner; that the vessel was libelled by material-men, who had furnished her with supplies in Boston, at different times, when she was here in the prosecution of her ordinary business, which was the trade between the Cape of Good Hope and Boston. Some of the material-men knew of the ownership, others did not; some of the supplies had been ordered by the master, and others by Mr. Taylor; all the bills had been charged to the ship and owners; the libellant had taken the note of Mr. Taylor, and had given him a receipt, that the note,

when paid, should operate as payment of the account.

L. G. Farmer, for petitioners.

This is a domestic vessel, because the owner lived here: The Island City [Case No. 7,109]; The St. Jago de Cuba, 9 Wheat. [22 U. S.] 409; Dudley v. The Superior [Case No. 4,115]; Hill v. The Golden Gate [Id. 6,-492]; The Alice Tainter [Id. 194].

F. Dodge, F. Dabney, R. M. Thompson, P. West, and W. E. L. Dillaway, for libellants.

The owner who has put his vessel under a foreign flag is estopped to deny that she is foreign: The Laura, 2 Marit. Law Cas. 225; The Walkyrien [Case No. 17,091]. At any rate, the place of registration is strong evidence of the domicile of the vessel: The Sarah Starr [Id. 12,354].

LOWELL, District Judge. It is now settled that material-men have a lien by the general maritime law on foreign vessels, including those which belong in a state of this Union other than that in which the supplies are furnished, and that domestic vessels are governed by the domestic law: The Lottawanna, 21 Wall. [88 U. S.] 558. But what vessels are to be accounted foreign, and what domestic? No doubt has ever been entertained that the papers and the flag furnish prima facie evidence upon the question; but suppose the real ownership does not coincide with the apparent or documentary ownership. This difference may arise in two ways: the buyer of a vessel registered or enrolled in a state of the United States different from his own may have neglected to change the registration or enrolment, without any intention of fraud or concealment, but by inadvertence or neglect. In such a case it has been held that one who deals with the true owners in the place of their residence, and knows them to be owners, cannot treat the vessel as foreign: Dudley v. The Superior [supra]; Hill v. The Golden Gate [supra]; The Island City [supra]; Weaver v. The S. G. Owens [Case No. 17,310]. It may be observed that Taney, C. J., held that the port of registration or enrolment decided the character of the vessel conclusively: Pickell v. The Loper [Id. 11,119]. A similar decision was made by Judge Betts. There is another class of cases, like the present, where the real and the apparent ownership are purposely kept separate. In these, if any false pretense is made, the person making it will be estopped; as, if he purposely represents the vessel to be either one thing or the other, he will be bound by his statement. There are dicta which seem to announce a general rule that the equitable ownership decides the question in all cases. One of my own has been cited, which seems to go to that extent. But I am satisfied that they are unsound. It was formerly said that if the owner were present when the supplies were furnished, there could be no credit given to the vessel: The St. Jago de Cuba, 9 Wheat. [22 U. S.] 409. This dictum will account for other broad dicta. If this were so, it would be of no particular importance what was called the home port, because wherever the owner happened to be would be such a port pro hac vice, and the equitable owner being proved to reside in the place where the supplies are furnished, and this being known to the material-men, there would be an end of the question. This rule cannot stand, because in the home port every thing depends on the local law, and if that gives a lien, notwithstanding the presence of the owner, the admiralty will enforce it: The Lottawanna, 21 Wall. [88 U. S.] 558. Nor is it the law that the presence of the owner precludes the possibility of a credit to the vessel in a foreign port by the general maritime law. This assumption was expressly overruled in The James Guy [Cases Nos. 7,195 and 7,196], 9 Wall [76 U. S.] 758; and see The Kalorama, 10 Wall. [77 U. S.] 204. Nor will it be safe to say that the equitable ownership governs the case. To one who is ignorant of that fact, the flag is entitled to credit, and would of itself work an estoppel: The Walkyrien [Cases Nos. 17,091 and 17,092].

I do not think it can be held that mere knowledge of the equitable ownership makes any difference. The vessel is either domestic or foreign: she must be one, and cannot be both. It comes, therefore, merely to a question of registration of the lien. By the law of Massachusetts, a record must be made; and by the general law there is no need or provision for such record. Is this a domestic vessel under the laws of Massachusetts, as interpreted and restricted within the constitutional authority of the state? I think not. When a ship is put by her owner under a foreign flag, he obtains all the benefits of that position. He ships his seamen according to the law of the flag, and the relative rights and duties of the parties are fixed by that law. In this very case I have decided some matters in controversy concerning the wages by the merchant shipping acts of Great Britain. The courts of the United States cannot punish offences committed on the high seas on board such ships. All international questions, public and private, are controlled by this circumstance. Why not, then, the privilege of material-men?

The theory of exclusive credit to the owner has become a mere fiction. No such credit is ever given in Massachusetts. I have never known a ship-chandler that did not prefer two securities to one; and it has been the usage of the trade to make their charges to the ship and owners, hoping and intending to have the security of both. Before the decision of The General Smith, 4. Wheat. [17 U. S.] 438, domestic vessels were held liable,

in this district, for all such supplies. I have seen many such cases on our records. Since that decision, the actions in this court for supplies to domestic vessels have been either in personam. or have been brought against the ship under some statute of the state. But, in my judgment, Massachusetts has no more to do with vessels rightly and lawfully owned by foreigners, and sailing under a foreign flag, than the United States have; and the statute of the state is not applicable and could not be conveniently applied to such a vessel.

I consider the decision in The Island City [Case No. 7,109], to be sound, because all parties had treated the vessel as a domestic one. and had recorded their liens upon that supposition; and so, whichever way the law might be, they were in the right; but, as I have already said, some of the dicta now appear to me to be broader than the law will sustain. A sound distinction may be taken between nearly all the cases above cited and the present, from the fact that here the flag and nationality of the ship are in question, and not merely the port of enrolment or registry.

I am of opinion. then, that it is a question of fact whether credit was given to the vessel; and, the presumption being the same in Massachusetts as by the general maritime law, and the evidence in this case confirming that presumption, that the libellants had, severally, a lien on the ship; that the ship being registered abroad, and flying a foreign flag by the consent and with the design of her owners, the creditors did not lose their lien by not recording their statement as required by the statutes of Massachusetts. Petition of general creditors denied.

---

Brown's Claim. The petitioners, S. R. Brown & Son, had acted as stevedores in stowing the cargo for the last voyage of the ship, and asked that they might be decreed to rank with the material men against the proceeds.

R. M. Thompson, for petitioner.

O. W. Holmes, Jr., and W. Munroe, for claimants.

LOWELL, District Judge. I am asked to review the decision which I felt bound to make in The A. R. Dunlap [Case No. 513], in which I followed the authorities, against my own opinion, in refusing a similar petition, expressing at the same time the hope that the case would be carried to the circuit court. Longer experience has taught me that cases of this sort rarely go beyond this court. and under these circumstances, the suitor, whose petition I consider sound, has a right to my judgment. Besides, it will be found. upon a critical examination of the decisions which I followed, that, although they have never been overruled on this special point of a stevedore's lien, their course

of reasoning has been declared unsound by the highest authority; and so an adherence to the mere result of those cases is not defensible on the ground of stare decisis, because it is standing by the letter at the expense of the principle.

The cases referred to are The Amstel [Case No. 339]; The Joseph Cunard [Id. 7,535]; Weaver v. The S. G. Owens [Id. 17,310]. The reasons are more fully given in the first case than in the others, but are alike in all. They are, first, that a stevedore works on land, or on a vessel at the wharf; and, second, that his concern is with the cargo rather than with the ship, and they liken him in this respect to the drayman, who brings the cargo to the vessel. The notion that the maritime character of a contract for either labor or materials, or of the remedy for furnishing them independently of contract, depends upon the situation of the vessel as being upon the high seas or in a dock, reached its climax when it was held that a laborer who scraped the bottom of a foreign vessel. preparatory to her being coppered, had no lien: Bradley v. Bolles [Id. 1,773]; and that the ship-keeper of a domestic vessel could not sue even in personam, in the admiralty: Gurney v. Crockett [Id. 5,874].

These decisions were made during the time. after Judge Story's death, when the supreme court seemed bent upon narrowing the jurisdiction in all possible directions, by decisions, some of which have now been overruled and others explained to mean much less than they appeared to intend. Judge Betts, in the decisions above cited, was evidently embarrassed by this state of opinion; for he had himself decided, ten years earlier, that a watchman or ship-keeper, who was given a lien by a state statute, might proceed for it in the admiralty; which, of course, decided that the labor or contract was maritime, and, by consequence, that a proceeding in personam would lie: The Harriet [Case No. 6,097]. It is now settled that a contract for supplies and repairs or other necessaries to a vessel is maritime in its nature, because it has to do with a ship. While, therefore, I agree that the stevedore is not a mariner, and has no lien on a domestic ship unless the local law gives it, I cannot hold, consistently with the present binding authorities, that his contract is not maritime. And so of the ship-keeper. If the services or contract properly concern the ship and her owners, they are clearly maritime, and can be sued against the owner of a domestic ship personally, or against the foreign ship in rem, in this court. The cases in the supreme court are so recent that I do not cite them.

This brings us to the second point. that the ship and owner are not concerned with the wages of a stevedore, because they relate only to the cargo. and therefore are not maritime. Mr. Benedict expresses his

unhesitating opinion that the service is maritime: Ben. Adm. (2d. Ed.) § 285. Judge Benedict expressed a similar opinion, though he felt bound to follow the decisions: The Circassian [Case No. 2,722]. That was a domestic vessel, and I consider his decision to have been right, as well as his general opinion; that is, the service is maritime, but it gives no lien, unless by the state law. Whether a stevedore is a material-man, strictly speaking, may be doubtful; but I apprehend that the law itself is no longer doubtful that one who furnishes what is reasonably necessary for a foreign ship, her voyage or business, stands on the same footing towards the ship as a material-man: Thomas v. Osborn, 19 How. [60 U. S.] 22; The Emily Souder, 17 Wall. [84 U. S.] 666. And, if it was ever true, it is no longer so, that the ship is only responsible for what is physically annexed to it, such as repairs. In most cases the responsibility of the owner and of the ship are, by our law, coextensive; and whatever the master has the right to buy on credit will bind both, and this is not only what is absolutely necessary for the ship and crew, but for the voyage or business of the ship: The Fortitude [Case No. 4,953]; The Gustavia [Id. 5,876]; The Grapeshot, 9 Wall. [76 U. S.] 129; The Medora [Case No. 9,391]; The Robert L. Lane [Id. 11,892]; Stearns v. Doe, 12 Gray, 482; Webster v. Seekamp, 4 Barn. & Ald. 352; Weston v. Wright, 7 Mees. & W. 396; The Alexander, 1 W. Rob. Adm. 362; The Riga, L. R. 3 Ecc. & Adm. 516; The Zodiac, 1 Hagg. Adm. 320; The Duke of Bedford, 2 Hagg. Adm. 294; The Gauntlet, 3 W. Rob. Adm. 82. I am not now speaking of the necessity for a credit, which has been pretty much explained away. There is no doubt that the ship is liable in this case, if a ship would usually be liable in like cases. It seems incredible that it could ever have been thought that the master, who in proper cases may charter, hypothecate, or even sell his ship, cannot bind it for the cost of stowing the cargo, which is one of the ordinary and self-evident necessities of the voyage. The above-cited cases show what expenses may be made by the master on the credit of the owner or in bottomry. I will, however, cite one or two late decisions, to show the character of the charges which are now held to be legitimate liens upon a vessel without a bond.

It is well known that the high court of admiralty in England was, for some centuries, prohibited from enforcing these tacit hypothecations; and that an act of parliament has now given that court jurisdiction to decide all claims and demands for necessaries supplied to a foreign vessel: 3 & 4 Vict. c. 65, § 6. Thereupon the tacit lien revived, without mention of lien in the statute, and the courts have held, that not merely what is necessary for the ship, but what is reasonably proper for the voyage, comes within the statute. The

decisions are cited and explained in The Riga, ubi supra; in which, among other charges, the following were allowed as necessaries: Tonnage and harbor dues, services of the libellant as agent and broker in procuring a charter, premium of insurance paid at the request of the owner. In The Emily Souder, 17 Wall. [84 U. S.] 666, 669, Field, J., says, "The moneys advanced by the libellants, it is true, were not entirely for the repairs to the vessel and the supplies needed for the voyage: they were intended and applied in part to meet the expenses of her towage into port and of pilotage, and to pay the custom-house dues, consular fees, and charges for medical attendance upon the sailors. These various items, however, stood in the same rank with necessary supplies and repairs to the vessel, and the libellant's advancing funds for their payment, were equally entitled as security to a lien on the vessel."

These cases are decisive. If the person who advances the money has a lien, it is because the service paid for was necessary. The stream cannot rise above its source. I hold, therefore, that the stevedore has a lien on a foreign ship for his services rendered at the request of the master in a case in which the ship is to stow the cargo. Petition granted.

---

Claim of the United States. Petition for $120.97, tonnage duties.

LOWELL, District Judge. The account presented by the United States for tonnage duties is the only one left to be disposed of. The law is, that upon vessels entering at any custom-house from any foreign port or place there shall be paid tonnage duties: Rev. St. § 4219. How or by whom these dues are to be paid is not expressed in the statute. Mr. Justice Story held that the consignee of a foreign ship was not personally liable to the United States for their payment, but said that the owner would be: U. S. v. Hathaway [Case No. 15,326]. It seems to me that a charge distinctly placed by a competent statute upon a ship, is payable by the ship. To be sure, by Rev. St. § 4206, all legal fees which shall have accrued on any vessel are to be paid to the proper officers before a clearance is granted her; and it is argued that this is the statute remedy, and is expressio unius. It is true that, where a statute creates at once a right and a remedy, the latter is in general exclusive. But this, of course, is so only when the statute is to be so understood; and I doubt whether the remedy must not be of a judicial or executive character against some person or thing. The mere right to refuse a clearance cannot be intended as the sole remedy for tonnage duties, because it is inadequate and incomplete, and for several other reasons: They are to be paid by the same ship but once a year; and, if refusing a clearance is the only remedy, then if the vessel is once assessed, and the collector neglects to refuse a clearance,

all remedy is gone, unless the vessel should happen to enter the same port again. So, if the vessel does not need a clearance, as may well happen, or chooses to take the risk of going to sea without one. the remedy is gone.

My impression is that the collector may refuse to enter as well as to clear a vessel which has not paid her tonnage duties; but supposing him to neglect or forget to do so, or supposing the vessel not to care about a clearance, I think the United States have an action for the duties against the owner, if they can find him; and perhaps against the master; and also against the thing, being a ship, upon which the duty is imposed, and more distinctly, I should say, against the ship than against the owner. It differs from ordinary duties on imports in the very important particulars. that those are not ships, and that the mode of collecting those duties is carefully pointed out, so that a remedy is provided; and, if it were not, there is nothing to give the admiralty court, as such, jurisdiction. But a charge on a ship, if it attaches to the ship itself, ordinarily gives this court jurisdiction, even in those domestic cases which require the sanction of a state statute for the creation of the charge.

In the case of The America [Case No. 289], I decided that a state statute imposing a charge upon a ship for pilotage might be enforced in the admiralty. The case of pilotage in the supreme court was in personam; but the reasoning is identical, as far as it goes, with that in The America. See Ex parte McNeil, 13 Wall. [80 U. S.] 236. It is true that pilotage is a maritime contract; but half pilotage imposed by statute, for not accepting a pilot, is only constructively a contract; only so because the statute makes it a debt rather than a penalty. I can see no legal distinction between pilotage dues imposed on a ship for entering the harbor without a pilot, and tonnage dues imposed on the same ship for entering for trade. Petition granted.