## THE SENATOR.

*(District Court, N. D. Ohio.* November 4, 1876.)

PROCEEDINGS IN REM—STEVEDORE SERVICE.
> The services of a stevedore are necessary to the general business of the transportation of the cargo, and contribute to the rewards of capital employed in maritime service. They should be regarded as maritime service, and the stevedore furnished with a remedy against the vessel.

In Admiralty.

*H. D. Goulder* and *F. Kelly*, for libelant.

WELKER, J. The libelant made a contract with the master of the vessel to perform service as a stevedore, to unload her cargo at the port of Cleveland. Having performed the service, and not having received his pay therefor, he proceeds *in rem* against the vessel for his wages.

The only questions made in this case are, whether the service was a maritime one, and whether a lien therefor attached upon the vessel. Stevedores are a class of laborers at the ports, whose business it is to load and unload vessels; and by long practice they become experts at the business. Like the occupation of a sailor, it requires practice as well as judgment to insure the faithful and profitable discharge of the duty. The safety of the vessel, as well as the cargo, depends very largely upon the manner in which it is loaded,—how the cargo is stored; whether secured so that one part of it does not injure another, or that storms do not break it loose, or shift and thereby damage it; and whether the vessel is trim or well-balanced for navigation. The necessity for skilled labor has created the demand for this separate class of laborers, and induced men to adopt it as an occupation. They have, in the large expansion of the business of transportation upon our lakes and rivers, become a necessity in every port. The demand for such service cannot be fulfilled by the common laborer; hence they have become so connected with navigation, to load as well as unload vessels, that they are regarded as a part of the maritime machinery for the commerce of the lakes. They perform an indispensable part of the transportation and delivery of a cargo,—to begin it and conclude it. If services intermediate are regarded as maritime, why not the commencing and closing service? The libelant in this case having been employed by the master of the vessel to unload the cargo, and the contract being one within the scope of his authority as such master, it would seem that the service would come within the rule referred to by Judge EMMONS in *The Williams,* (1 Brown, 208,) in which he quotes and adopts the language of Judge WARE in *The Paragon:* "Every contract of the master within the scope of his authority binds the vessel, and gives the creditor a lien for his security." In the same case Judge EM-

MONS also says: "All maritime contracts made within the scope of the master's authority do, *per se*, hypothecate the ship."

I am aware that there are decisions opposed to the right to proceed *in rem* for this class of service; but they do not seem to be founded on sound principle, and I do not feel it to be my duty to follow them. There does not seem to be any difference in principle between that service and the service performed by the sailor, the lighterman, the man who sets the rigging, who scrapes the bottom or paints the side of the vessel, or by him who furnishes supplies, or tows the vessel out or into the port. They are all necessary to the general business of the transportation of the cargo, and contribute to the reward of capital employed in maritime service, and alike should be regarded as maritime service, and furnish a remedy against the vessel.

Decree for libelant.

See *The Bernard*, 2 FED. REP. 712; *The Windermere*, Id. 722, 727; *The Canada*, 7 FED. REP. 119; and *Hubbard* v. *Roach*, 2 FED. REP. 394.—[ED.