## THE HATTIE M. BAIN.

*(District Court, S. D. New York.  May 21, 1884.)*

1. MARITIME LIEN—STEVEDORES—WORKMEN—COLLATERAL PROMISE.

The work of a stevedore in loading or unloading cargo is a maritime service, within the definition of the supreme court in *Ins. Co.* v. *Dunham,* 11 Wall. 26. It is maritime because it "relates to a maritime transaction," and is rendered in the discharge of the maritime obligation which the ship owes to the goods. *Held, therefore,* that a lien should no longer be denied to workmen rendering stevedore's service to foreign vessels.

2. SAME—WORKMEN—COLLATERAL PROMISE.

Workmen employed solely by the head stevedore, under the modern usages of business, are presumed to know that they must look to him only for their pay, and hence have no lien upon the ship, nor have they a lien on the captain's collateral promise as to past services; but where they work, either upon the captain's direct employment, or upon the faith of his promise that he will see them paid, the workmen are entitled to a lien, as provided by the Consulat de la Mer.

In Admiralty.

*J. L. Hyland,* for libelants.

*Benedict, Taft & Benedict,* for claimants.

BROWN, J.  This libel was filed by several persons claiming wages due them for stevedore work in unloading a cargo of logwood from the brig Hattie M. Bain, in September, 1881.  The head stevedore was one McAllister, by whom most of the libelants were originally employed.  In their behalf it is claimed, however, and the testimony shows, that a number of them, at least, being informed that McAllister was not to be trusted to pay them, went to the captain and told him that they could not trust McAllister, and would stop work unless the captain would see them paid; and that the captain, being in haste for the discharge of the cargo, promised that he would see that they were paid.  The captain admits that on the last day he employed two of the men, but he denies that he employed or promised to pay any others.

As respects those workmen to whom the captain's promise, if any, was collateral only to the obligation of McAllister, and who did not work on the faith of the captain's promise, no recovery can be had; for it was McAllister's debt, and it is impossible, under the present known customs, that workmen engaged by the head stevedore should not understand that they must look to him for their pay.  The old law of the Consulado expressly provided that where the workmen knew the work was done by a contractor by the job the ship could not be seized. Vol. 1, c. 54, § 83; *The Mark Lane,* 13 FED. REP. 800.  But the Consulado also declares that if the patron (captain) promise to pay the workmen, and they work on the faith of it, though the work be let out to a contractor by the job, that promise must be made good.  Chapter 54, § 85.  Where the original employment is by another, and the alleged promise by the master is disputed, no liability of the ship can

be admitted, unless the court is clearly satisfied that the work itself was done on the faith of the master's promise; a subsequent promise by the master to see the men paid is a mere collateral promise, and insufficient. In the present case, I think this is made out in regard to only five of the libelants, and I therefore allow as follows: Grant, $2.70; Boyle, $33.50; Kehoe, $11.50; John Hammill, $1.95; Thomas Hammill, $1.95; and I disallow the other claims.

The other defense is that no lien exists for stevedores' services, on the ground that the service is not a maritime service. That was formerly the rule followed in this district. It is not to be denied that the supreme court has sanctioned a more enlarged view of what is comprehended under a maritime service than that which formerly prevailed in this country. In *Ins. Co.* v. *Dunham*, 11 Wall. 26, the court say:

"As to *contracts* it has been equally well settled that the English rule, which concedes jurisdiction, with a few exceptions, only to contracts made upon the sea, and to be executed thereon, (making locality the test,) is entirely inadmissible, and that the true criterion is the nature and subject-matter of the contract; as whether it was a maritime contract, having reference to maritime service or maritime transactions."

The ship is bound to make proper stowage, and proper discharge of the cargo; for any breach of duty in either the ship is liable, and a maritime lien arises, because the obligation is maritime. Suits for the enforcement of liens arising from the breach of these obligations are of frequent occurrence; and there is no dispute either as to the lien in such cases, or as to the maritime character of the ship's obligation properly to stow and discharge cargo. But if the ship's obligation is maritime, the service rendered to the ship in discharging that obligation must be maritime also. In the language of the supreme court, it "has reference" exclusively "to a maritime transaction." Every service rendered to the ship in discharging her own maritime obligations must be held to be maritime, and, if the vessel is in a foreign port, will give a maritime lien for such service. The subject has been so fully discussed by CHOATE, J., in the case of *The Windermere*, 2 FED. REP. 722; by BENEDICT, J., in *The Circassian*, 1 Ben. 209, and *The Kate Tremaine*, 5 Ben. 60; by LOWELL, J., in *The G. T. Kemp*, 2 Low. 482; and by DEADY, J., in *The Canada*, 7 FED. REP. 119,—that I have nothing to add beyond what is there stated in support of a stevedore's lien.

In the case of *The Thames*, 10 FED. REP. 848, this court held that a shipping broker has no lien for services in procuring a charter-party, on the ground that this was clearly separable, as a preliminary service leading to a maritime contract, and was not of itself a maritime service. The services of such a broker are no part of the obligation of the ship to the goods, and therefore separated by a clear line of division from services like those of a stevedore, which are rendered in the discharge of a maritime obligation.

Entertaining no doubt that stevedores' services are maritime within the definition of the supreme court, the lien to which they who render such services are justly entitled, by the general principles of the marine law, should no longer be denied them when the services are rendered, as in this case, to a foreign vessel. The libelants are, therefore, entitled to a decree for the amounts above specified; but as the case is the first in which this lien has been directly allowed in this district, it will be without costs, except the clerk's and marshal's fees.