FLOREZ et al. v. THE SCOTIA.

(*District Court, S. D. New York.* August 8, 1888.)

MARITIME LIEN—STEVEDORES—BRITISH VESSEL—CONFLICT OF LAWS.
　　The services of stevedores in unloading a foreign vessel are maritime, and a part of the performance of the vessel's contract of carriage. *Held,* that the master of a British ship has authority in the port of New York to employ a stevedore to unload, and that the stevedore, under the *lex loci,* has a lien on the vessel for his services.

In Admiralty. Libel for services.
*Edwin G. Davis,* for libelants.
*George A. Black,* for claimants.

BROWN, J. The libel in the above case was filed to recover $926.05, the amount of the bill of the libelants for work as stevedores in unloading the British steam-ship Scotia in this port in December, 1886. This court has in numerous cases within the last 10 years sustained a maritime lien for stevedores' services, and for other services analogous in character. Formerly, the labor of unloading was usually performed by seamen, whose lien was never questioned. 1 Kay, Shipm. 582; Dana, Sea. Fr. 216; 1 Pet. Adm. 253. The vessels of some nations are still discharged here by their own seamen. The work of unloading is undeniably a maritime service. It is a part of the performance of the vessel's maritime contract of carriage, and necessary to enable the ship to earn her freight. It is, therefore, not merely a service to the ship, but a neces-

sary service. The fact that a stevedore's service in unloading includes putting the goods upon the land, certainly renders the service none the less maritime in its character. In the case of *Wortman* v. *Griffith*, 3 Blatchf. 528, Mr. Justice NELSON, in overruling a similar objection to the jurisdiction, says: "The nature and character of the contract and of the services, have always seemed to me to be sounder guides for determining the question." The same is repeated by Mr. Justice BRADLEY in *Insurance Co.* v. *Dunham*, 11 Wall. 1, 26. In the changed conditions of our foreign commerce, so largely now in foreign hands, a lien upon the ship is often the only resource to which this meritorious class of workmen can look as security for their payment. The general rule of the maritime law is, as stated by Judge WARE in *The Paragon*, 1 Ware, 322, 323, that "every contract of the master within the scope of his authority binds the vessel, and gives the creditor a lien for his security." Both principle and policy, in our present circumstances, demand the application and enforcement of this general maritime rule for the protection of our own citizens. It has been adopted to a considerable extent in other courts, and I should greatly regret to see its application relaxed. See *The Canada*, 7 Fed. Rep, 119; *The Minna*, 11 Fed. Rep. 759; *The Onore*, 6 Ben. 564; *The Hattie M. Bain*, 20 Fed. Rep. 389, 390, and the cases there cited; *The Senator*, 21 Fed. Rep. 191; *The Velox*, Id. 479; *The Henry Warner*, 29 Fed. Rep. 601, 603; *The Olga*, 32 Fed. Rep. 329.

The objection that the master of a British ship has no authority under the British law to incur a lien is overruled, upon the grounds more fully stated in the case of *Mills* v. *The Scotia*, *ante*, 907. There can be no question that the master had a general authority to employ stevedores to unload the cargo of this vessel. For the work done under such employment the stevedores are therefore entitled to whatever lien and security are given them by the law of this port, as the place where the contract was made and performed, and where the suit to enforce the lien is brought; without reference to the British law, or whether the British courts would recognize and enforce the lien or not. Judgment for the libelants for $926.05, with interest from December 23, 1886.