## THE SEGURANCA.

### VANHOESEN et al. v. THE SEGURANCA.

(District Court, S. D. New York.    December 5, 1893.)

MARITIME LIEN—WATCHMEN OF CARGO—CONTRACTOR.

    A contractor, who, pursuant to his general business, furnishes watchmen to watch the cargo of a vessel before delivery, for a vessel in her home port, has no maritime lien where the workmen are not employed by the ship, and have no lien themselves to which such contractor can be subrogated.    Such a case is similar to that of furnishing any other repairs or supplies in the home port.

    Semble, such watchmen and stevedores, when employed by the ship's representative, on her credit, may have a lien for their wages in enabling the ship to earn her freight, even in the home port, as analogous to the wages of seamen, to pilotage, towage, or wharfage.

In Admiralty.    Libel by P. D. Van Hoesen and another against the steamship Seguranca to recover for watchmen's services.    Libel dismissed.

Wing, Shoudy & Putnam, for petitioners.
Carter & Ledyard and Mr. Bayliss, for respondent.

BROWN, District Judge.    The petitioners carry on the business of employing and furnishing men as watchmen for vessels in this city.    The petition and proofs show that in December, 1892, they supplied several different persons as watchmen to watch the cargo of the Seguranca, which was lying at Roberts' Stores in Brooklyn, until the cargo could be delivered to the consignees.    Some of the cargo, as I understand, was on the dock, and some on board the vessel.    New York was the vessel's home port.

The services, it is said, were substantially like those of stevedores, for which, as the claimants contend, there can be no maritime lien in the home port.

The ground upon which it was formerly held that a stevedore had no lien, was that his service was not a maritime service; and consequently no lien was allowed therefor, whether the vessel was foreign, or domestic.    The weight of authority, however, now is, that such services are maritime.    The Windermere, 2 Fed. 722; The Canada, 7 Fed. 119; The Circassian, 1 Ben. 209; The George T. Kemp, 2 Low. 477; The Hattie M. Bain, 20 Fed. 389; The Scotia, 35 Fed. 916; The Gilbert Knapp, 37 Fed. 209; The Main, 2 C. C. A. 569, 51 Fed. 954.

There are several cases in which it has been intimated, or might be inferred from the language of the court, that though the service is a maritime one, no lien arises therefor in the home port. The George T. Kemp, 2 Low. 483; The Main, 2 C. C. A. 569, 51 Fed. 954; Norwegian Steamship Co. v. Washington, 57 Fed. 224; The Hattie M. Bain, 20 Fed. 389.    And in the case of the Gilbert Knapp, 37 Fed. 209, that view is directly expressed, upon the analogy of the rule as regards repairs and supplies; although the question there chiefly considered was the maritime nature of the service; and the case was decided on other grounds.    I have not found, however, any

case actually adjudicated on this ground, where the maritime nature of the service was recognized.

On the other hand, a lien for watchmen's and stevedore's services, upon a domestic vessel, where their services were necessary to enable her to earn her freight, was upheld by Benedict, J., in the eastern district of New York, in the case of The Trimountain, 5 Ben. 247; and his ruling is quoted with approval by Judge Choate in The Erinagh, 7 Fed. 231; though in the latter case the vessel was foreign. In the cases of The Onore, 6 Ben. 564; The River Queen, 2 Fed. 731; and The Senator, 21 Fed. 191; similar services were held to create a maritime lien, without reference to the vessel's home port; and in the eastern district of Missouri, says Thayer, J., (The Wyoming, 36 Fed. 493, 495,) "a maritime lien is allowed for stevedore's services in the home port, when the service is shown to have been rendered on the credit of the vessel, or when such fact is fairly inferable from the circumstances under which the service was rendered."

These adjudications, it seems to me, are most in harmony with the maritime law as respects the wages of persons who render their services upon the employment of the ship's officers or agents, on the credit of the ship, and to enable the ship to perform her obligations. There is no true analogy, it seems to me, except in the maritime nature of the service, between the wages claims of such persons, and the furnishing of repairs and supplies in the home port. The latter are usually furnished by contract, not with the ship's officers, but with the owner, or his agent; they are often for large amounts, contracted for in the ordinary course of mercantile dealings, like other nonmaritime contracts; and they are not usually supplied in the course of any voyage, nor to enable the ship to perform any maritime duty already incurred; nor under any immediate necessity for the work, or for the supplies, or for the ship's credit to obtain them; and they are, therefore, presumptively furnished on the credit of the owner.

The personal services of watchmen or stevedores, on the other hand, in cases like the present, are necessary to enable the ship to discharge her maritime duty, to accomplish her voyage, and to earn her freight; they are rendered in the course of the voyage; since the voyage is not ended as regards the goods, until they are delivered, or ready for delivery. These men are mere substitutes for seamen, who formerly did, and often still do, the same work, and have a lien therefor. See The Mattie May, 45 Fed. 899, and The Scotia, 35 Fed. 916. It is but right that the same lien should be allowed for the wages of the substitutes, who are employed merely for greater safety, skill, and economy. The men live along the docks; they rarely, if ever, deal with the owners, or have any knowledge of them, or of their credit, or look to them for their pay. When directly employed by the agents or officers of the ship, under the necessity of immediate service, and to enable the ship to earn her freight, the wages of such workmen, though like repairs and supplies in being maritime, are not at all analogous, as it seems to me, as respects their status, to contracts for repairs and supplies in the home port;

nor do I perceive any reason why our anomalous exception as regards repairs and supplies should be extended to such wages claims. They seem to me more truly analogous to seamen's services, or to pilotage, towage, and wharfage, furnished to aid the ship to perform her duty, for all of which, liens in the home port are allowed. The Kate Tremaine, 5 Ben. 60, 68. Chapman v. Engines, 38 Fed. 671, 672; The Allianca, 56 Fed. 609, 613. In most maritime codes, indeed, the wages claims of watchmen, of ship or cargo, take precedence even over those of seamen. Code de Com. § 191; German Code, § 757; Italian Code, § 675; Netherlands Code, § 313.

If, therefore, the libelants were seeking to enforce a lien for wages for their personal services as watchmen, I should feel bound, both upon precedent, and for the reasons above stated, to sustain their claim. But such is not this case. The libelants are in the situation of contractors who supply the services of other persons as workmen, and presumably make a profit by it. There is no claim to any lien by subrogation or substitution; and no such claim could be sustained. For no lien ever accrued to the watchmen themselves, since they were not employed by the ship, but by the libelants only; and to the libelants only did they look for their pay. This distinction was anciently recognized, and it was acted on by this court in the case of The Hattie M. Bain, 20 Fed. 389. The libelants were employed by the owners; they cannot claim wages, since they rendered no personal services. They simply supplied the labor of other persons, whom they employed and paid. This differs in no degree, so far as I can perceive, from a contractor's supply of workmen to do repairs; and thus the present case falls strictly within the analogy of repairs and supplies in the home port; and, on this ground, the libel must be dismissed.