### THE FORTUNA.

(District Court, W. D. Washington, N. D. July 15, 1913.)

#### No. 2,514.

ADMIRALTY (§ 13*)—JURISDICTION—ACTION FOR SERVICE OF WATCHMAN.

The services of a watchman, rendered to a vessel while disengaged and laid up for repairs, with the master discharged, is not a maritime service, and a suit to recover therefor is not within the admiralty jurisdiction.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 164–176; Dec. Dig. § 13.*]

In Admiralty. Suit by Sunde & Erland, Herman Larson and others, partners as I. N. Larson & Sons, the Dickson Bros. Company and A. J. Stuckey against the schooner Fortuna. On exceptions to intervening libel of A. J. Stuckey. Exceptions sustained.

Wedell Foss, of Tacoma, Wash., for libelant Stuckey.

Willett & Oleson, of Seattle, Wash., for respondent.

CUSHMAN, District Judge. This matter is for decision upon the exceptions of the respondent to the intervening libel of A. J. Stuckey, seeking to enforce a claim against the respondent schooner for services of a watchman. The intervening libel alleges: That the Fortuna belongs to the port of Tacoma, in this district. "That the said schooner, some time in the month of September, 1912, arrived at the port of Dockton, Washington (about ten miles from Tacoma), under the command of her late master, K. Anderson, where the said schooner was laid up and said master discharged. While said schooner was so disengaged, it was necessary for her to undergo certain repairs, and be furnished with certain supplies, and be taken care of in order to preserve said schooner and to fit her to go to sea." That Joseph Kildall, president of said company, and manager of said schooner, ordered and purchased certain supplies and secured cer-

tain advances in money for supplies and repairs of the intervening libelant, who also furnished material and labor for the repairing of the schooner, "and in order to take care of said schooner, upon the request of the said Joseph Kildall, as aforesaid, this intervening libelant furnished a watchman to take care of said schooner during the months of March, April, and May. * * * "

Libelant relies upon the following authorities: The Erinagh (D. C.) 7 Fed. 231; The Seguranca (D. C.) 58 Fed. 908; Benedict on Admiralty (4th Ed.) § 147.

Respondent relies on the following authorities: The America (D. C.) 56 Fed. 1021; The Mary F. Chisholm (D. C.) 129 Fed. 814; Baltimore Steam Packet Co. v. Geo. F. Patterson, 106 Fed. 736, 45 C. C. A. 575, 66 L. R. A. 193 at 231 & note.

The question to be determined upon the exceptions is whether, under the facts alleged, the intervening libelant has a lien upon the vessel of which admiralty will take jurisdiction, and this depends upon whether the services of the watchman furnished by the intervening libelant were maritime in character.

The exceptions must be sustained: The America (D. C.) 56 Fed. 1021; The Champion, Fed. Cas. No. 2,584; McGinnis v. The Grand Turk, Fed. Cas. No. 8,800; The John T. Moore, Fed. Cas. No. 7,430; The E. A. Barnard (C. C.) 2 Fed. 712; The Sirius (D. C.) 65 Fed. 226. No case to which the court's attention has been called can be said to support the contrary contention.

The case of The Erinagh (D. C.) 7 Fed. 231, was the case of a foreign vessel. The watchman was employed while the vessel was in quarantine, and before she came to the dock to discharge her cargo. Therefore the voyage had not yet ended. In that case it is said:

"In the first two cases referred to (Gurney v. Crockett, Abb. Adm. 490 [Fed. Cas. No. 5,874]; The Harriet, Olc. 229 [Fed. Cas. No. 6,097]), which were decisions in this court in 1845 and 1849, the claims of watchmen employed upon a vessel laid up, and not at the time employed in any voyage, or in the performance of any contract of affreightment, were disallowed, as not being for services maritime in their nature. * * * The cases of The John T. Moore and of The E. A. Barnard appear also to have been cases of vessels laid up and not in use for purposes of commerce. * * * And whatever may be the rule upon the facts of those cases, where the vessel was laid up, undergoing repairs, dismantled, or not engaged in any voyage, or earning freight, I have no hesitation in holding that it is in accordance with the present view of what constitutes a maritime contract that the service of a watchman on board a vessel coming into port utterly disabled by the sickness of her crew, and having on board a cargo to deliver in order to earn her freight, is a maritime service for which there is a maritime lien on the ship." Pages 234, 235.

The case of The Seguranca (D. C.) 58 Fed. 908, was also a case of a watchman's services where the cargo had not yet been discharged. In the course of the opinion in that case it was said:

"The personal services of watchmen or stevedores, on the other hand, in cases like the present, are necessary to enable the ship to discharge her maritime duty, to accomplish her voyage, and to earn her freight; they are rendered in the course of the voyage; since the voyage is not ended as regards the goods, until they are delivered, or ready for delivery." Page 909.

In the case of The Maggie P. (D. C.) 32 Fed. 300, the contract was held an indivisible one for the repair and preservation of the vessel; that to preserve the vessel its navigation was necessary. The opinion recites:

"It is averred in the libel that it was part of libelant's duty as watchman to keep the steamer in a place of safety, and to that end to move and navigate her from place to place as circumstances demanded. * * *"

These cases are each, therefore, clearly distinguishable from the present one—that of a vessel with the master discharged, the vessel disengaged and laid up for repairs. The service of a watchman, under such circumstances, is not a maritime service.

No reason has been advanced in argument, based on the peculiar situation or needs, either of such a vessel, those interested in her, or the persons performing such services, to justify vesting the jurisdiction in a court of admiralty. The service does not pertain to the sea.

The exceptions are sustained.