### HEIL et al. v. UNITED STATES.

(District Court, S. D. New York. June 15, 1921.)

United States ⬥125—Suable for failure to transmit cable message.

Under Tucker Act, § 1, and Judicial Code, § 24 (20), being Comp. St. § 991 (20), authorizing suits against the United States on "all claims * * * founded * * * upon any contract, express or implied, with the government of the United States * * * in respect to which claims the party would be entitled to redress against the United States * * * if the United States were suable," a suit may be maintained against the United States for failure of a cable company, which had been taken over and was being operated by the government, to transmit a message which it had accepted for transmission, and for transmission of which it had been paid.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by Alfred W. Heil and Joseph S. Heil, partners as Heil & Co., against the United States. On demurrer to petition. Overruled.

Demurrer to a petition under the Tucker Act for failure to allege any cause of action. The petition alleges the President's seizure of the marine cables of the Commercial Cable Company on November 2, 1918, under the war power, and his consequent operation of them, and that during the time of such operation the plaintiffs paid the proper tolls and delivered to "the Commercial Cable Company," as an "agency" of the United States, a cable message to be sent to London, which "the company" (i. e., the Commercial Cable Company) promised to transmit; that "the respondent" (i. e., the United States) never transmitted the message at all, and because of that failure the plaintiffs lost. The message was for the purchase of £100,000 sterling, and the loss depended upon fluctuations in British exchange.

Henry Amster, of New York City, for petitioners.

J. Julien Sutherland and Peter B. Olney, Jr., of New York City, for the United States.

LEARNED HAND, District Judge. It is conceded that, were these allegations contained in a complaint against the Commercial Cable Company before or after the operation of their property by the President, the demurrer would not lie. The question is whether any similar legal duties or obligations resulted during that period. None such can result, unless the United States has created them by statute, and the only relevant statute is the Tucker Act, which provides for suits upon—

"all claims * * * founded * * * upon any contract, express or implied, with the government of the United States * * * in respect to which claims the party would be entitled to redress against the United States, * * * if the United States were suable." Comp. St. § 991 (20).

So the parties have correctly presented as the sole question whether the claim is founded upon an express or implied contract with the government of the United States.

For procedural purposes the failure to transmit or deliver a telegraph message may be made to sound in contract. The company promises, though not verbally, to transmit the message in consideration of the tolls. But, quite independent of its promise, it is under a duty to accept, transmit, and deliver—a duty arising from the statutes which create it or permit its activities. Ellis v. American Tel. Co., 13 Allen (Mass.) 226, 232; Smith v. Western Union Tel. Co., 83 Ky. 104, 113, 4 Am. St. Rep. 126. That duty makes the promise unnecessary, and indeed would make nudum pactum a true bilateral contract to receive and transmit a message. The sender, having got no promise to do what the company was not independently bound to do, would have received no consideration. Besides, the terms of the promise are not within the company's pleasure. Some things they may reserve; some they may not, depending upon the interpretation of their imposed duties. At best it is merely an obligato, irrelevant to the melody set by specific command.

Nevertheless, after the President took over the cables, he was under no such duty imposed by law to accept messages, nor was the United

States. His decision, or the Postmaster General's, to accept cable messages as before, however imperatively required for the convenience of the public, was necessarily voluntary, and it is quite conceivable that circumstances should have arisen which would have resulted in their total suspension. This applies as much to every message as to all, there being as little duty imposed upon him to send a given message as to send any class. The right to discriminate between messages was indeed freely exercised during the war at the delegated discretion of the public authorities. The situation was therefore quite changed during the period of governmental operation, and there was no right to send or duty to receive cables, except as it arose from the free determination of officers of the United States, in the discharge of their duties.

Of course, the Tucker Act is not to be interpreted verbally; nor should I think the fact in any sense determinative that the sender of a cable message might sue the telegraph company ex contractu. The reason why it seems to me that the act applies here is that, if the United States had not the immunity of a sovereign, there would for the foregoing reasons have been no breach of positive duty ("subtraction"), and there would have been a breach of contract. That is precisely the situation which the act was drawn to meet. Congress meant to assume liability for the acts of such of its agents as had the power in the discharge of their duties to assume or refuse engagements on the faith of which other citizens should rely. It did not mean to assume liability for the proper discharge of duties which it imposed upon those agents by virtue only of positive law.

It was urged at the bar that this result might expose the United States to serious loss and impede it in the discharge of its governmental functions. This is, of course, an irrelevant consideration, when the purpose of the act is clear; but here it is out of place in any event. Whatever be the justification in policy of the sovereign's immunity, the first consideration ought to be this: That in the performance of its voluntary engagements with its citizens it should conform to the same standard of honorable conduct as it exacts of them touching their conduct with each other. Any policy which would exempt the United States from the scrupulous performance of its obligations is base and mean; it serves in the end to bring the United States into contempt, to prejudice it in its dealings when it enters into the common fields of human intercourse, and to arouse the indignation of honorable men. Congress by the Tucker Act meant to avoid such consequences.

The demurrer is overruled.