**CORY BROS. & CO., Limited, v. UNITED STATES.**

No. 430.

Circuit Court of Appeals, Second Circuit.

July 21, 1931.

Choate, Larocque & Mitchell, of New York City (Joseph Larocque, of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (William E. Collins, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Proceeding under the Suits in Admiralty Act (41 Stat. 525 [46 USCA §§ 741–752]). Cory Bros. & Co., Limited, a corporation organized under the laws of Great Britain, filed its libel against the United States to recover the amount of disbursements incurred by it in defending a suit for cargo damage brought by a shipper against the steamship Milwaukee Bridge, in which suit Cory Bros. & Co., as ship's agent to attend to discharge of the cargo at Pernambuco, Brazil, had been impleaded upon the petition of the United States, claimant of the vessel. That litigation, the details of which need not now be stated, is reported in The Milwaukee Bridge (D. C.) 15 F.(2d) 249, affirmed 26 F.(2d) 327 (C. C. A. 2), certiorari denied Moore v. U. S., 278 U. S. 632, 49 S. Ct. 31, 73 L. Ed. 550. It resulted in exoneration of the impleaded respondent from fault in respect to discharge of the cargo. Thereupon Cory Bros. & Co. filed the present libel "in a cause of contract, civil and maritime" upon the theory that by reason of its employment as agent to attend to discharge of the cargo, the United States became obligated to reimburse it for expenses incidental to such employment, including the attorneys' fees and disbursements it had incurred as a respondent impleaded in the aforesaid suit. Exceptions to the libel were filed on the ground, first, of lack of jurisdiction in admiralty; and, second, that no cause of action was alleged in admiralty or otherwise. The opinion below, sustaining the exceptions and dismissing the libel with leave to amend, may be found in 43 F.(2d) 589. A premature appeal from that order was dismissed in Cory Bros. & Co. v. U. S. (C. C. A.) 47 F.(2d) 607. The present appeal is from a later order which dismissed the libel finally.

Assuming that the United States was under an obligation to reimburse Cory Bros. & Co. for the expenses in question, the first problem presented by this appeal is whether a suit to enforce such obligation is within the jurisdiction of the District Court.

It is well settled that the jurisdiction of admiralty in matters of contract depends upon the subject-matter of the contract. North Pac. S. S. Co. v. Hall Bros. Co., 249 U. S. 119, 125, 39 S. Ct. 221, 63 L. Ed. 510; New England M. Insurance Co. v. Dunham, 11 Wall. 4, 26, 20 L. Ed. 90. While this test is not always easy of application, it seems obvious that the work of lading or discharging a ship's cargo is a maritime service, and that a contract engaging stevedores to do such work is of admiralty cognizance. The Hattie M. Bain, 20 F. 389 (D. C. S. D. N. Y.); Florez v. The Scotia, 35 F. 916 (D. C. S. D. N. Y.); The Gilbert Knapp, 37 F. 209 (D. C. E. D. Wis.). The libelant assumes its contract to be of this character (see The Milwaukee Bridge [D. C.] 291 F. 711), and argues that the implied obligation to reimburse the agent for expenses in defending a suit arising out of performance of the principal's business should likewise be held maritime. Cf. The Electron, 48 F. 689 (D. C. S. D. N. Y.); Linen Thread Co. v. Shaw, 9 F. (2d) 17 (C. C. A. 1). But it is by no means clear that libelant's assumption is correct. The contract employed Cory Bros. & Co. to act as ship's agent at Pernambuco, and the agent was instructed not only to attend to the discharge of cargo at that port, but also to book cargo for ports beyond. Whether it was contemplated that the libelant should itself perform stevedoring services or should engage others to do so is not clear from the letter which constitutes the contract, nor is it made clear by the allegations of the libel. The libel alleges merely that the libelant "properly attended to the discharge of said

cargo and duly and properly made delivery thereof." If the contract merely employed libelant to procure maritime services instead of obligating it to perform them itself, it may well be that a suit to recover compensation and disbursements would be not of maritime cognizance. Such a distinction has been frequently observed. Thus, while a contract for the charter of a ship is clearly maritime in nature, a contract creating an agency to obtain charterings has been held nonmaritime. The Thames, 10 F. 848 (D. C. S. D. N. Y.); Taylor v. Weir, 110 F. 1005 (D. C. N. J.); Rhederei A. Gesellschaft Oceana v. Clutha Shipping Co., 226 F. 339 (D. C. Md.). Cf. Adler v. Galbraith, Bacon & Co., 156 F. 259 (D. C. W. D. Wash.); Brown v. West Hartlepool Steam Nav. Co., 112 F. 1018 (C. C. A. 5). The same has been held as to a contract with an agent to procure crews, The Retriever, 93 F. 480 (D. C. W. D. Wash.); insurance on a ship, Marquardt v. French, 53 F. 603 (D. C. S. D. N. Y.); freight and passengers, The City of Clarksville, 94 F. 201 (D. C. Ind.); The Humboldt, 86 F. 351 (D. C. Wash.); Richard v. Hogarth, 94 F. 684 (D. C. N. J.); The Crystal Stream, 25 F. 575 (D. C. S. D. N. Y.). The rationale has been thus stated: "The distinction between preliminary services leading to a maritime contract and such contracts themselves has been affirmed in this country from the first, and not yet departed from. It furnishes a distinction capable of somewhat easy application. If it be broken down, I do not perceive any other dividing line for excluding from the admiralty many other sorts of claims which have a reference, more or less near or remote, to navigation and commerce. If the broker of a charter-party be admitted, the insurance broker must follow,—the drayman, the expressman, and all others who perform services having reference to a voyage either in contemplation or executed." Brown, J., in The Thames (D. C.) 10 F. 848. See, also, The Harvey and Henry, 86 F. 656 (C. C. A. 2); 1 Benedict, Admiralty (5th Ed.) § 62. Apparently the same ground explains the decision in Minturn v. Maynard, 17 How. 477, 15 L. Ed. 235, where the libelant had been employed by the shipowner as general agent and had expended money for supplies, repairs, and advertising of the ship. The suit was for disbursements and commissions, and it was held that the agent's remedy was not a libel in admiralty, but a suit in assumpsit. See, also, St. Paul Fire & Marine Ins. Co. v. Birrell, 164 F. 104,

106 (D. C. Or.); The Esteban de Antunano, 31 F. 920, 923 (C. C. E. D. La.).

It is difficult, if not impossible, to distinguish Minturn v. Maynard from the case at bar, and that decision would seem to be a controlling authority against admiralty jurisdiction of the present suit. Moreover, the appellee invokes the principle that, even if the contract was maritime in so far as it related to attending to discharge of cargo, admiralty will not take jurisdiction of nonmaritime transactions arising subsequent to the execution of a maritime contract. Cf. Home Ins. Co. v. Merchants' Transp. Co., 16 F.(2d) 372, 373 (C. C. A. 9); United Transp. & L. Co. v. New York & Baltimore T. Line Co., 185 F. 386, 390 (C. C. A. 2). But we do not find it necessary to determine definitely these troublesome questions of admiralty jurisdiction, because, if the District Court lacked jurisdiction in admiralty, it possessed jurisdiction under the Tucker Act, 28 USCA § 41 (20). Hence on one ground or the other it had power to entertain the suit.

The Tucker Act confers upon the District Courts jurisdiction of suits against the United States for "all claims not exceeding $10,000 founded upon * * * any contract, express or implied, with the Government of the United States. * * *" The theory of the present libel is that the contract of agency contained the usual implied obligation of a principal to reimburse the agent for expenses incurred in the course of the agency, and that this obligation has been broken.

"* * * The United States, when they contract with their citizens, are controlled by the same laws that govern the citizen in that behalf. All obligations which would be implied against citizens under the same circumstances will be implied against them." United States v. Bostwick, 94 U. S. 53, 66, 24 L. Ed. 65; cf. Clark v. United States, 95 U. S. 539, 542, 24 L. Ed. 518.

It is apparent that the present action is "founded upon" a contract, partly written and partly implied from prior dealings entered into with duly authorized representatives of the United States, and brought to enforce alleged obligations of that contract. Such a claim is clearly included within the spirit and language of the Tucker Act. Cf. Heil v. United States, 273 F. 729, 731 (D. C. S. D. N. Y.); Crouch v. United States, 31 F. (2d) 211 (D. C. E. D. S. C.).

In United States v. James W. Elwell & Co., 250 F. 939, we held that a libel in ad-

miralty might be converted into an action qui tam when the defendant by answering had waived a jury. In Owens v. Breitung (C. C. A.) 270 F. 190, 193, and Louis-Dreyfus v. Paterson Steamships (C. C. A.) 43 F.(2d) 824, 828, 72 A. L. R. 242, it is intimated that jurisdiction might be supported on diverse citizenship, although the pleadings were drawn on the erroneous assumption of jurisdiction in admiralty. In the case at bar, we see no difficulty in sustaining the suit as one upon a contract with the United States over which the District Court is given jurisdiction concurrent with the Court of Claims by the Tucker Act. Such a suit is not tried to a jury, and the libel will serve as a petition. It is true that, if a suit will lie under the Suits in Admiralty Act (46 USCA §§ 741–752), it cannot be brought under the Tucker Act, for the remedy given by the former is exclusive. Johnson v. Fleet Corporation, 280 U. S. 320, 50 S. Ct. 118, 74 L. Ed. 451. But it by no means follows that a suit erroneously assumed to be under the Suits in Admiralty Act cannot be treated as one under the Tucker Act. The mistake results only in formal differences. The pleading has been called a libel instead of a petition, and contains allegations of admiralty jurisdiction, which are surplusage. So we hold that, if the court did not have jurisdiction in admiralty, jurisdiction existed under the Tucker Act, and we pass to a consideration of the merits, namely, whether the libel states facts sufficient to constitute a good cause of action.

█ The appellant invokes the principle that, when an agent is sued by a third party on account of acts done in the course of the agency and pursuant to authority, his employer must reimburse him for expenses incurred in successfully defending such a suit. See Bibb v. Allen, 149 U. S. 481, 13 S. Ct. 950, 37 L. Ed. 819; Powell v. Trustees of the Village of Newburgh, 19 Johns (N. Y.) 284; Stocking v. Sage, 1 Conn. 519; First Nat. Bank v. Tenney, 43 Ill. App. 544; The James Seddon, L. R. 1 Adm. & Ecc. 62; In re Famatina Development Corp. (1914), 2 Ch. 271; Mechem, Agency (2d Ed.) § 1600 et seq. It then argues that this principle is applicable to the situation created by petitioning in appellant as a respondent impleaded in the cargo owner's suit, because upon the bringing in of a respondent under the fifty-sixth Admiralty Rule (28 USCA § 723) "the cause is to be treated as if the libel had originally been filed against both" the respondent and the respondent-impleaded. See Cuneo Im-

porting Co. v. Am. Importing & Transp. Co., 247 F. 413, 414 (C. C. A. 2).

The principle of agency relied upon may be assumed to be sound; and we may further assume that this principle would apply to a suit brought by a third party against the principal and into which the agent was impleaded, provided a direct cause of action against the impleaded agent could be asserted by the third party. The fifty-sixth rule, however, permits the impleading of a new party in two different situations: one, where the impleaded respondent is directly liable to the libelant, either jointly or alternately with the original respondent or claimant; and the other, where the impleaded respondent is liable only to the original respondent or claimant and is brought in because the latter seeks a remedy over in case the libelant shall succeed against him. See The Sarnia, 261 F. 900, 901 (C. C. A. 2); The Lysefjord, 263 F. 623 (D. C. S. D. N. Y.); The Providence, 293 F. 595, 599 (D. C. R. I.). The allegations of the libel in the case at bar leave it very doubtful whether the Milwaukee Bridge litigation was not a situation of the latter kind; and, if it were, Cory Bros. & Co. would have no right to recover its expenses. A principal's obligation to reimburse his agent for expenses of litigation arising out of the agency should not be extended to include the defense of a suit brought by the principal himself for nonperformance or misperformance by the agent of his duties. However, we do not wish to dispose of the appeal on the vagueness of the pleading, since there is a more substantial reason for holding that the libel sets forth no cause of action.

█ The fifth article of the libel incorporates the letter which constitutes the contract between appellant and appellee. This letter requests appellant to attend to the discharge of the cargo and to book cargo for points beyond. Whether it be interpreted as employing appellant to engage others to do the stevedoring in discharging the flour or to perform the stevedoring service itself makes no difference; in either case appellant is an independent contractor. The Satilla, 235 F. 58 (C. C. A. 2); The Robert R., 255 F. 37 (C. C. A. 2); Soderberg v. Atlantic Lighterage Corp., 19 F.(2d) 286, 288 (C. C. A. 2). The principle that an agent is entitled to reimbursement in successfully defending a suit brought by a third party on the charge that he has negligently performed his agency to the injury of the plaintiff should have no application to an independent contractor. The

risks of the independent contractor's business are his own. If he loses such a suit, he must not only pay the expense of his defense, but must also indemnify his employer against the breach of contract which the latter may have committed by reason of the independent contractor's tort to the plaintiff. If he wins such a suit, it is true that he has benefited his employer by proving that the latter performed his contract with the plaintiff. But does that benefit justify an implication that the employer agreed to reimburse him for the expenses of such litigation? We think not. The independent contractor, unlike the agent who acts under the instructions of his principal, is engaged in his own business, and the risks of having to defend suits brought by third persons who allege that the business has been so conducted as to damage them should be his. Hence we think the principle of agency relied upon was not applicable to the relationship existing between appellant and appellee.

It is true that the libel alleges that the appellant co-operated with the United States at its request in defending the cargo owner's suit, and that its expenses were for the benefit of the United States. But these allegations are to be interpreted in the light of the other facts disclosed. It is clear that the appellant was brought into the proceedings in invitum, and that it is not claiming reimbursement under any new contract relating to the defense of the suit, but is relying on the implied obligation supposed to be contained in its original employment as ship's agent. For the reasons we have stated, there was no such implied obligation.

Accordingly the libel stated no cause of action, and the decree of dismissal must be affirmed.