MONSON SAV. BANK, Ex parte. See Case No. 9,555.

MONSON & B. MANUF"G CO. (ELY v.). See Case No. 4,431.

MONSON & B. MANUF"G CO. (POWELL v.). See Cases Nos. 11,356 and 11,357.

---

## Case No. 9,716.

### The MONSOON.

[1 Spr. 37; [2] 5 Law Rep. 416.]

District Court, D. Massachusetts. Nov., 1842.

MARITIME LIEN—PROVISIONS FURNISHED—VESSEL TAKEN BY MASTER ON SHARES—KNOWLEDGE OF LIBELLANT.

A person who furnishes provisions to a vessel not in her home port may have a lien therefor. although he knows the master has taken her on shares, and is to victual and man her.

[Cited in Hill v. The Golden Gate, Case No. 6,491; The Columbus, Id. 3,044; Harney v. The Sydney L. Wright. Id. 6,082a; The William Cook. 12 Fed. 920; Stephenson v. The Francis, 21 Fed. 723; The Stroma, 53 Fed. 283.]

In admiralty.

C. P. Curtis and B. R. Curtis, for libellant. T. Parsons, for claimants.

SPRAGUE, District Judge. This is a libel in rem by Nickerson, a ship chandler, for necessary provisions furnished at New York to a vessel owned in Massachusetts. The

---

[1] [Reported by Hon William Cranch, Chief Judge.]

[2] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

master, one Alleyne, had taken her on shares, that is, under a contract with the owner to divide the earnings. A part of the agreement was, that Alleyne should victual and man her. This agreement was known to the libellant when he furnished the provisions. It is admitted by the learned counsel for the claimants that a lien would have been created by these supplies, if the libellant had been ignorant of the contract between the general owner and the master. But it is contended, that with knowledge that the master was to victual and man the vessel, it would be a fraud on the general owners to create an incumbrance upon her for provisions, and that Nickerson was bound to look to the master alone. If credit had in fact been given exclusively to the master, then the right to a lien would have been waived, and none would have existed; but such was not the fact. There is no doubt that the provisions were furnished on the credit of the vessel also. In order to see whether a lien was created in this case, we must look to the general authority of the master, and the reasons on which it is founded. He has power to hypothecate the vessel in other than the home port for necessary supplies, or to create a lien upon her therefor; and this power is given in order that he may pursue the voyage. It is deemed for the benefit of the owners, that such a right should exist, that the certainty of holding the ship therefor, without the necessity of inquiring into the state of the title, or the ability of the owners, should give the greatest facility for obtaining these necessaries.

I am not aware of any case in which the state of the title has in any degree affected this right; and I think it would impair the usefulness of the rule, to introduce any such modification of it. It will be less plain and certain, and would not adequately accomplish the object of the law, in giving the best security, as the highest inducement to persons abroad, to furnish the necessary supplies. I should fear that owners themselves would be the sufferers from any diminution of the certainty of this security.

In the case now before the court, the general owners were directly interested in the success of the voyage. Their profits or compensation for the use of the vessel depended on its prosecution. I am satisfied, that it was competent for the master to obtain these supplies upon the credit of the vessel, and that a lien was created thereby. Decree for the libellant.

See also The Phebe [Case No. 11,064]; Freeman v. Buckingham. 18 How. [59 U. S.] 190; Thomas v. Osborn. 19 How. [60 U. S.] 22; Pratt v. Reed, Id. 361; Webb v. Peirce [Cases Nos. 17,320, 17,321]; The Sarah Starr [Case No. 12,354.]