## NORWEGIAN STEAMSHIP CO. v. WASHINGTON.

### (Circuit Court of Appeals, Fifth Circuit. June 20, 1893.)

#### No. 136. ·

1. MARITIME LIENS—STEVEDORE'S SERVICES—PRESUMPTIONS.

The services of a stevedore in stowing cargo in other than the home port are services of a maritime nature, and the presumption is that they were rendered on the credit of the vessel.

2. SAME—CHARTER PARTY.

The mere fact that a vessel is under charter by a charter party which makes the charterers liable for the expenses of loading and unloading is not sufficient to exempt the vessel from liability to one who renders services as a stevedore at the request of one whom he supposes to be the owner's or charterer's agent. The burden is on the vessel to show that the stevedore had knowledge of the terms of the charter party.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

In Admiralty. Libel by Frederick S. Washington against the steamship Kong Frode (the Norwegian Steamship Company of the South, claimant) to recover for services rendered as a stevedore. There was a decree for libelant, and the claimant appeals. Affirmed.

Statement by LOCKE, District Judge:

The steamship the Kong Frode, owned by the appellant herein, a corporation of Christiana, Norway, was on the 9th of November, 1891, chartered by the United States & Honduras Trading Company for the term of 12 calendar months. The charter party provided that the owners should appoint the master, provide the crew, and pay for all provisions and wages; the charterers to pay for coals, fuel, port charges, pilotages, and all other charges whatsoever, and £700 sterling per month for her use and hire. Before this charter had expired, the charterer, the United States & Honduras Trading Company, rechartered her to Ross, Howe & Merrow, of New Orleans, to load three cargoes of general merchandise to Havana and other ports in Cuba at charterers' option. By this charter party the charterers were to pay freight at fixed rates per sack or bushel; "the vessel to pay for stevedoring, and all other customary charges on cargo." While loading under this charter, the libelant, as he alleges, was hired and employed by the master to load and properly stow the cargo into the steamship, and did load and properly stow the cargo, which, at the agreed rates for which lading and stowing was done, amounted to $369.75. Upon the presentation of the bill the master signed the same, "attesting" it. Upon presenting the bill to the firm whom the libelant supposed to be the agents of the vessel, and at whose place of business,—the master being present,—he had made the agreement to perform the work, payment was refused, and he commenced suit against the steamship in an action in rem. The master gave bonds for the release of his vessel, and filed exceptions to the libel, which being overruled, an answer was filed, admitting that libelant was hired and employed to perform the services charged, and that he did properly store the said cargo, but denies that the price was the agreed price, or that any agreement for price was made, but that the price charged was exorbitant and excessive, and more than the services of libelant were worth, and averring, further, that the steamship was at the time under a time charter, and the services of the stevedore were to be paid for by the charterers, and that the libelant had full knowledge of these facts at the time he performed the services.

The testimony showed that the first charterers, Messrs. Andress & Mitchel, under the name of the United States & Honduras Trading Company, had put their business as charterers into the hands of Hoadly & Co., of New Or-

leans, and that through their representative, Mr. Wood, the libelant was procured to load the vessel, but before the final determination of the business the agency was transferred to Ross, Howe & Merrow, to whom the vessel had been rechartered, and Hoadly & Co. refused to pay any further bills.

Upon the hearing, judgment was given for the libelant for the amount of the bill, with interest from judicial demand and costs, from which judgment an appeal has been taken, assigning as error that the court erred in not holding that the steamship was under a charter party which exempted her from liability for stevedores' charges, and the stevedore having been employed by the charterers, under a contract with the charterers, the stevedore had no lien on the vessel; that the court erred in not holding that the libelant knew that the vessel was under a charter party, and that he knew he was engaged by the charterers, and that the fact that he presented his bill to the charterers clearly proves that the services were performed by the libelant on the credit of the charterers, and not on the credit of the vessel, and therefore the libel should have been dismissed; that the court erred in not holding that the services of the stevedore did not inure to the benefit of the ship, but inured to the benefit of the charterers, and that there was no lien on the vessel in favor of the stevedore, and in not holding that the libelant's bill was exorbitant and excessive.

Guy M. Hornor, for appellant.

O. B. Sansum, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts.) Where a necessary maritime service, or a necessary service which gives a maritime lien, is rendered to a foreign vessel upon the application of the master, or in his behalf, the presumption is that it is rendered upon the credit of the vessel, and the burden of proof is upon him who contends otherwise. The Grapeshot, 9 Wall. 141; The Lulu, 10 Wall. 192; The Patapsco, 13 Wall. 329. It has been settled as the rule in this circuit that a stevedore's services, rendered to a ship in taking in, stowing, and discharging cargo, are services of a maritime nature, and, when rendered in other than a home port, a maritime lien will result. Dennett v. The Main, 2 C. C. A. 569, 51 Fed. Rep. 954. Such services have in numerous cases been deemed as necessary to enable a vessel to pursue the general business of the transportation of cargo and the earning of freight, for which the vessel is intended, as any other class of maritime services. The Canada, 7 Fed. Rep. 119; The Velox, 21 Fed. Rep. 479; The Gilbert Knapp, 37 Fed. Rep. 209; The Onore, 6 Ben. 564.

The duties of consignees or agents of ships, or the agents of charterers or owners, are so similar and undistinguishable that without some positive knowledge of their relations, contracts, and agreements, it is impossible to determine to which class an agency may belong; and the fact that a merchant purchases supplies, or procures services to be rendered a vessel, raises no presumption that he therefore sustains relations with the owners that make him responsible, and relieve the vessel from a lien. In the great majority of instances, in ordinary practice, the material man or stevedore contracts with, and takes his bill for payment to, the agent of the

ship, whether he represents the owners or charterers, without the intervention of the master; but by so doing he does not abandon his right to look to the vessel in event of a nonpayment. It cannot be presumed or expected that he can be informed as to the exact provisions of the charter, or the responsibilities of the parties, in each particular case.

Examining this case in the light of these general principles, we fail to find any affirmative proof that the libelant was informed of the character or conditions of the charters, or either of them, or the responsibilities of the vessel or charterers, or in any way gave the agent personal credit, to the exclusion of the vessel, or that the circumstances are shown to be such that he should be held to have done so. The final charter—the one under which he was loading at this time—specified distinctly that the vessel should pay for the stevedoring; and, had he known of this, it was in no way compulsory upon him to go back of that, and find to whom the term "the vessel," there used, referred,—whether owners or previous charterers; and, were he ignorant of the provisions of either charter, it cannot be presumed he knew of, or contemplated, any paymaster but the vessel. There is nothing that shows that he knew what relation Hoadly & Co., through whose instrumentality he was employed, held to the vessel, any more than that they were the agents of Andress & Mitchel, whom he says he supposed to be the charterers' or owners' agents,—some one who looked out for the business. His testimony upon this point is:

"The charterers or the agents of the ship, who handled the business, made the agreement." "Andress & Mitchel, and John G. Woods, were the agents of Hoadly & Co., who were the managing owners here." "I made the contract with the agents of the ship." "The owners' agents at that time, I suppose, were Andress & Mitchel."

He states plainly that he did not know they were the charterers, as that did not concern him.

It is not enough to show that an agent who employs labor or procures supplies for a vessel is a charterer, and under that charter liable for the bills incurred, but it is necessary that the creditor also be aware of the relation, and furnish the supplies or services with such an understanding. The Patapsco, supra.

There is nothing in the case that raises the presumption that libelant performed the services upon the credit of Andress & Mitchel, and intended to look to them for his pay. They do not appear to have been residents of New Orleans, but are described as "two men from New York, who had opened an enterprise between this [New Orleans] and Honduras." Any property or credit they may have had in New Orleans, by which it might appear libelant had probably trusted them, is not shown. Not only is there a lack of affirmative proof that Washington was aware of the relations of vessel and charterer, and intended to waive his admiralty lien, but everything tends to strengthen the presumption that he intended to rely upon it. His bill was made against the vessel; he procured the attestation of the master; and, al-

though it was presented to Hoadly & Co., it was as agents of Andress & Mitchel, whom he considered agents for the owners. In the cases of The Stroma, 53 Fed. Rep. 281; The Golden Gate, 1 Newb. Adm. 313; The Aeronaut, 36 Fed. Rep. 499; and the other cases relied upon by respondent,—the charterers were owners pro hac vice, and the libelants' agents knew them to be such. Here, such is not the case. The owners appointed and paid master and crew, and held control of the vessel subject only to the terms of the charter party. The charterers were not special owners. Nor do we find that the libelant knew the conditions of the charter party, or that by it the charterers were to pay for stevedoring.

Nor do we find the rates charged to have been exorbitant or unreasonable. They appear to have been less than were paid by some merchants, and the same as paid by all the vessels consigned to the same agents; and the preponderance of evidence is very largely in favor of their being but fair, just, and reasonable.

We find no error in the judgment of the court below, and it is affirmed, with costs.