### THE GEORGE DUMOIS.

### GULF CITY COAL & WOOD CO. v. BRU.

(Circuit Court of Appeals, Fifth Circuit. May 21, 1895.)

No. 361.

1. MARITIME LIEN—SUPPLIES—BURDEN OF PROOF.
   Where necessary supplies are furnished to a ship in a foreign port, and are received by the master and used in the service of the ship, a maritime lien results, unless it is shown that the furnisher of the supplies relied on the credit of the owner, not of the ship; and the burden of showing such fact, to defeat the lien, rests on the ship and her claimants.

2. SAME—EVIDENCE.
   Coal was furnished by libelant, at Mobile, Ala., to the ship G., upon the personal order of one D., the president of the C. Co., the charterer of the ship. The C. Co. was a Louisiana corporation, and D. a resident of New Orleans, neither appearing to have had any property at Mobile. The ship was not in a port of distress, but was running regularly between Mobile and foreign ports. No reference was made to the vessel as a source of credit when the coal was ordered, but it was received by the master, and used in prosecuting a voyage, which could not have been made without it, and it was charged on libelant's books to the ship. *Held*, that libelant had a lien on the ship for the price of the coal.

Appeal from the District Court of the United States for the Southern District of Alabama.

This was a libel by the Gulf City Coal & Wood Company against the steamship George Dumois, Johan Bru, claimant, for supplies. The district court dismissed the libel. 66 Fed. 353. Libelant appeals. Reversed.

L. H. Faith, for appellant.

Gregory L. Smith and H. T. Smith, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PARDEE, Circuit Judge. The Gulf City Coal & Wood Company, an Alabama corporation, filed a libel in the district court against the George Dumois, a Norwegian steamship, then in the port of Mobile, to recover the sum of $276 for 115 tons of coal supplied to and used by said steamship to prosecute a voyage to Bocas del Toro, Central America, and return to the port of Mobile. On the hearing in the district court, the judge found facts as follows:

"I find the facts in this case to be that the coal was furnished to the ship in Mobile, Alabama, on the personal order of one Dick, the president of the Columbian International Colonization & Improvement Company of New Orleans, La., who were the charterers of the ship for the term of one year; that the ship was a foreign vessel; that libelant knew that the C. I. C. & I. Co. were the charterers; that the ship was not in a port of distress; that she was running in a regular line between the port of Mobile and foreign ports; that in the negotiation for the coal no reference was made to the vessel as a source of credit, and there was no inquiry made of or dealing with the master or any agent of the ship. I further find that the charterers had, by the terms of the charter party, agreed to pay for such supplies, but that the libelant had no actual knowledge of this provision of the charter party. In short, the C. I. C. & I. Co. were the known owners of the ship, and Charles I. Dick was the president and representative of the company. The coal was obtained on the personal order of Dick in a foreign port, where he was at the time of giving the order. * * *"

On examination of the evidence, we concur with the district judge in these findings, but we also find from the evidence the additional facts that the coal was received by the master and officers of the steamship, and was used by the ship in prosecuting the voyage, and was a necessary supply to the ship, without which the voyage could not have been prosecuted; and that, while the agent of the charterers was in Mobile, and ordered the coal, both the agent and the charterers were nonresidents, not shown to have either credit or visible property in Mobile or elsewhere. The coal furnished by libelant was charged at the time on the books as follows:

S. S. Geo. Dumois (for C. I. C. & Imp. Co.)
Fleming & Gelpi, (Agents.)

115 Tons  $2.40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $276.00

The entry on the ledger reads as follows:

S. S. Geo. Dumois.
Fleming & Gelpi, Agts. for Columbian I. C. & Imp. Co. N. O. La.

| 1894. | | | 1894. | | |
|---|---|---|---|---|---|
| Oct. 27. | 115 Tons Coal, $2.40 (165) | $276.00 | Nov. 1. | By sight draft (155) | $276 |
| Nov. 6. | Sight draft unpaid (507) | 276.00 | | | |
| Nov. 6. | Protest fees | 2.50 | | | |
| | | $278.50 | | | |

The district judge dismissed the libel, because, from the facts as above recited by him, he inferred that the coal was not furnished on the credit of the ship, but on the personal credit of the charterer only. The judge cited in support of his conclusion: The Stroma, 41 Fed. 599 (s. c., 3 C. C. A. 530, 53 Fed. 281); Stephenson v. The Francis,

21 Fed. 715; Neill v. The Francis, Id. 921; Herreshoff Manuf'g Co. v. The Now Then, 50 Fed. 944 (s. c., 5 C. C. A. 206, 55 Fed. 523); and The Kong Frode, 13 U. S. App. 459, 6 C. C. A. 313, 57 Fed. 224, —and said:

"The substance of these decisions is that in dealing with a known charterer, even in a foreign port, for mere ordinary supplies, the dealings are prima facie upon his personal credit only; and no lien will be implied, unless the libelant satisfies the court, from the negotiations or the circumstances, that there was a common understanding or intention to bind the ship."

The Stroma, supra, decided in the circuit court of appeals, Second circuit, and The Francis, decided in the district court for the Southern district of the same circuit, are cases in which it was found that the furnisher of supplies was charged with notice that the charterer ordering the supplies was obligated by the charter to pay for the same, and hence this rule:

"When the known foreign special owner, not being the master, orders the supplies in a foreign port, and the libelant has reason to know that, as between the special and the general owner, the former is not the agent of the latter, but is personally, solely liable for the debt, and he furnished the goods in silence, there being no acts or circumstances from which it can be inferred that the credit of the ship was either within the contemplation of both parties, or was recognized by both, a maritime lien will not be implied."

In Herreshoff Manuf'g Co. v. The Now Then, supra, decided in the circuit court of appeals, Third circuit, which was a case in which the repairs were made upon the ship on the order and credit of the owner's husband, known to be wealthy, the court, while recognizing the general rule to be:

"If necessary repairs and materials be made and furnished to a vessel in a port other than her home port, the prima facie presumption is that they were made and furnished on the credit of the vessel, unless the contrary appears from the evidence in the case."

—Held that this general rule was subject to qualification, as follows:

"When the work is done by order of the master, a lien is implied; but for work done by order of the owner no lien will exist, unless proved by the agreement of parties."

Without questioning the correctness of the decisions in these cases on the facts as therein found, we are of opinion that the true rule to be applied in cases like the one under consideration is broader than as given above. In The Kong Frode, supra, decided by this court, the following principles were declared:

"Where a necessary maritime service, or a necessary service which gives a maritime lien, is rendered to a foreign vessel upon the application of the master, or in his behalf, the presumption is that it is rendered upon the credit of the vessel, and the burden of proof is upon him who contends otherwise. The fact that a merchant purchases supplies for, or procures services to be rendered to, a vessel, raises no presumption that he therefore sustains relations with the owners that make him responsible, and relieve the vessel from a lien. It is not enough to show that an agent who employs labor for a vessel is a charterer, and is, under the charter, liable for the bills incurred, but it is necessary that the creditor should also be aware of the relation and furnish the supplies or services with such an understanding. Ordinarily, where a material man or stevedore contracts with, and takes his bill for payment to, the agent of the ship, whether he represents the owners or charterers, without the intervention of the master, he does not abandon his right to look to the vessel in the event of nonpayment."

And further, Judge Locke, speaking for the court, said, as applicable to that case:

"The duties of consignees or agents of ships, or of the agents of charterers or owners, are so similar and indistinguishable that, without some positive knowledge of their relations, contracts, and agreements, it is impossible to determine to which class an agency may belong; and the fact that a merchant purchases supplies or procures services to be rendered a vessel raises no presumption that he therefore sustains relations with the owners that make him responsible, and relieve the vessel from a lien. In the great majority of instances in ordinary practice the material man or stevedore contracts with and takes his bill for payment to the agent of the ship, whether he represents the owners or charterers, without the intervention of the master; but by so doing he does not abandon his right to look to the vessel in the event of nonpayment. It cannot be presumed or expected that he can be informed as to the exact provisions of the charter, or the responsibilities of the parties in each particular case." 13 U. S. App. 463, 6 C. C. A. 313, 57 Fed. 221.

In The Patapsco, 13 Wall. 329, which was a case in which it was sought to relieve a ship from the maritime lien resulting from coal supplied in a foreign port, Mr. Justice Davis, for the court, said:

"Whether the coal was furnished on the credit of the vessel or of the owners is the only point of inquiry in this case. * * * It is undisputed that the Patapsco was in a foreign port, and that the coal was ordered for her specifically by name, and delivered to the officers in charge of her. It is equally free from dispute that the supply of coal was necessary—indeed, indispensable—to enable her to make her voyage at all. In such a case the inference is that the credit was given to the vessel, unless it can be inferred that the master had funds, or the owners had credit, and that the material man knew of this, or knew such facts as should have put him on inquiry. * * * If the credit was to the vessel, there is a lien, and the burden of displacing it is on the claimant. He must show affirmatively that the credit was given to the company to the exclusion of a credit to the vessel."

From the principles declared in The Kong Frode and in The Patapsco and cases there cited by Mr. Justice Davis, we understand the rule to be that, where necessary supplies are furnished to a ship in a foreign port, and they are received by the master, and used by him in the service of the ship, a maritime lien results, unless it shall appear that the furnisher of supplies did not rely upon the ship, but trusted solely to the personal credit of the owner; and the burden of proof in such a case to defeat the lien lies upon the ship and her claimants. Applying this rule to the case in hand, we are compelled to differ with the learned judge of the court below as to the proper decision of this case. Taking the facts to be as we find them in the record, we cannot infer from them that the libelant in the court below (appellant here) furnished the coal on the personal credit of the charterers, and did not rely upon the credit of the ship. While it is true the coal was supplied to the ship on the order of the agent of the charterers with knowledge on the part of the libelant that the ship was under charter, yet he did not know, nor was he bound to know, the terms of the charter party. It does not appear that the charterer had credit in the port of Mobile, or was so represented. The libelant sold the coal for cash, and at the lowest market price. While the bill was sent to charterers for payment, it was so done by request, and the bill and libelant's book entries were against the ship. In our view, the burden of showing that the coal was furnished on the credit of owners was on the claimant, and he

v.68F.no.8—59

has not supported his contention with sufficient evidence. Further than this, we notice that by the law of Alabama (Code Ala. § 3054) a lien is given on any ship supplied or victualed within the state, irrespective of whether she is in her port or a foreign port, and irrespective of whether the supplies are furnished and the victualing done on the order of the master, or of any other agents of charterers or owners. With this in mind, it would be a very violent presumption upon the undisputed facts of this case, where the goods were sold for cash, and at the lowest market price, to infer that the libelant intended to waive both the domestic and the regular maritime lien to rely upon the credit of a foreign company with no established credit. The decree appealed from is reversed, and the cause is remanded, with instructions to enter a decree for the libelant for the amount claimed in the libel and costs.