THE ADVANCE.

THE ALLIANCA.

THE SEGURANCA.

THE VIGILANCIA.

EMPIRE WAREHOUSE CO., Limited, v. THE ADVANCE. SAME v. THE ALLIANCA. SAME v. THE SEGURANCA. SAME v. THE VIGILANCIA.

(Circuit Court of Appeals, Second Circuit. January 16, 1896.)

MARITIME LIENS—WHARFAGE—CONTRACT WITH OWNERS OF DOMESTIC VESSEL.
Where wharfage, together with the use of warehouses and piers for receiving and storing freight, were furnished to several vessels belonging to a domestic corporation for a single price per day, under a contract with it, held, that no lien arose—First, because the contract embraced other valuable considerations the supply of which would give no lien against the ship, and which could not be separated from the wharfage proper; and, second, because the contract did not look to the credit of the ship, but only to the personal responsibility of the owner. 60 Fed. 766, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

These were four libels filed by the Empire Warehouse Company, Limited, against the steamships Advance, Alliance, Seguranca, and Vigilancia, respectively (the United States & Brazil Mail Steamship Company, claimant), to enforce an alleged lien for wharfage. The district court dismissed the libels on the ground that the libelant had no lien. 60 Fed. 766. The libelant has appealed from that decree.

Ulls, Ruebsamen & Cochran, for appellant.

Carter & Ledyard (Chas. D. Wetmore and Edmund L. Baylies, advocates), for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. We are not called upon in these causes to decide the question whether a maritime lien arises for wharfage furnished to a vessel at her home port. The lien certainly does not arise when the circumstances of the transaction are inconsistent with the contemplation of an hypothecation of the vessel. In The J. M. Welsh, 8 Ben. 211, Fed. Cas. No. 7,327, the lien was claimed for towage. It appeared that the towage was rendered under an agreement between the libelant and the vessel owner to tow all the boats of the latter between Troy and New York during the season of navigation in a certain year for a fixed sum per trip. Benedict, J., said:

"The contract is inconsistent with the idea of a lien, and shows that a lien upon the boats was not within the contemplation of the parties. For services rendered under such a contract, and upon an exclusively personal credit, no lien exists."

In The Stroma, 11 U. S. App. 673, 680, 3 C. C. A. 530, 53 Fed. 281, this court used this language:

"It is perhaps unnecessary to say that the same prima facie presumption, by virtue of which a lien is placed upon a vessel for the payment for necessary supplies furnished to her in a foreign port upon the sole order of the master, is not applicable in the case of supplies furnished in a foreign port to a vessel upon the express direction of the known general owner. In the latter case there is not, prima facie, a presumption that there was a necessity for the credit of the ship."

A lien for wharfage stands on no better ground than one for towage, or for supplies furnished to a vessel in a foreign port.

In the present cases the wharfage accrued during the later months of 1892 and the early months of 1893 for accommodations furnished to several vessels belonging to the appellee, under the following circumstances: In June, 1891, or shortly thereafter, a contract was made between the libelant and the vessel owner, a New York corporation having its domicile at New York City, and running a line of steamers between that port and Brazil, by which the former, in consideration of a per diem compensation to be paid by the latter, agreed to allow the latter the entire use of one of its piers for loading and discharging outward and inward cargoes, for receiving and storing freight pending the arrival of any of the company's steamers, and while any of them might be in berths for inward or outward cargo, and also the right to use the pier for any and all purposes for the interests of the company, and to use one of the libelant's warehouses for outward freight. The contract rate of compensation was considerably in excess of statutory rates for wharfage, and the per diem was payable whenever there was an inward or outward cargo on the wharf, and until notice, whether any steamer was present or not. The steamship company used the premises under this contract during 1891, 1892, and 1893, until it became insolvent, a receiver of its property having been appointed in February, 1893. Bills for the per diem compensation were presented to and paid by the steamship company from time to time, and were allowed to run for a considerable period. No specifica-

tions of lien were ever filed against the vessels pursuant to the provisions of the state law; and no claim was ever made against the vessels by the libelant until after the failure of the steamship company. At that time the steamship company was indebted for the use of the premises for 148 days, amounting to $4,440. From the course of business between the parties it is entirely plain that the libelant relied upon the personal credit of the steamship company.

The learned district judge who decided the cause in the court below made the following observations in his opinion:

"I am constrained to find that there is no maritime lien in this case. (1) because whatever wharfage privileges were furnished, were furnished under a contract which, for a single price per day, embraced other valuable considerations, the supply of which would give no lien upon the ship, and it is impossible to divide the price per day into different parts; (2) because the evidence indicates, beyond doubt, as it seems to me, that the dealings were upon a personal contract between the two companies, which did not look to any credit of the ship, but only to the personal responsibility of the steamship company."

In these observations we fully concur.

So far as the libelant's claim rests upon the items for supplies, the use of the stationary engine on the wharf, and the services of the engineer in running it, it stands on no better footing than the claim for wharfage.

The decree of the district court dismissing the libel is affirmed, with costs.