## THE C. W. MOORE.

(District Court, E. D. Wisconsin. March 29, 1901.)

MARITIME LIENS—WHARFAGE—CONTRACT WITH CHARTERER.

The fundamental requisite for the creation of a maritime lien is a maritime claim contracted or incurred on the credit of the vessel, either expressly or by implication, and not on the credit of the owner or other person in interest. No implied agreement arises for a pledge of the credit of a vessel for the rental of wharfage privileges in the port where the charterer, with whom the contract is made, resides where he is not the master, and is required by the charter to pay all expenses and keep the vessel free from liens, and where the owner of the wharf, if he is not informed of the fact or terms of the charter, is put upon inquiry by the circumstances, but makes no inquiry.

In Admiralty. Libel in rem for rent of wharf on contract with charterer of the steamer.

The steamer C. W. Moore was and is owned by Hart Steamboat Line, a Wisconsin corporation; and the home port of the steamer was Green Bay, Wis., and so shown in connection with the name painted upon the stern of the boat. The owners chartered the steamer to McKernan & Brubaker, of Chicago, on June 3, 1899, and by the terms of the charter party the charterers were to man and furnish the steamer, keep her free from liens; and bond was given to provide against lien claims. During the preceding month the charterers arranged with the libelant for rental of docking privileges at $150 per month for a "line" which they proposed to establish, with a steamer which "they were to purchase," according to libelant's version of the talk. The charterers were young men, without means, but with some experience in connection with a line which had previously used this dock; and the libelant was well acquainted with the member who made such arrangement for dock-age. For about three months, commencing in the latter part of June, the steamer in question was operated by the charterers under the name of "Chicago, Kenosha & Waukegan Line," making daily trips to and from the libelant's dock; but the rent agreed upon was not paid, and the steamer was restored to the owners on September 24th or 25th. The libelant asserts that he had no knowledge in fact of the charter or its terms, made no inquiries as to ownership or charter, and admits that the rent was charged upon his books "to the charterers and their line."

C. E. Kremer, for libelant.
M. C. Krause, for claimant.

SEAMAN, District Judge. The libelant furnished his wharf for the use of the steamer at the home port of the charterers, and under their personal contract of rental for the season; and the claim of lien against the vessel rests alone upon the maritime nature of the contract, and the fact of use by the vessel, with no exigency or special circumstance to create the need for an implied hypothecation. The contention in support of the libel is this: That wharfage dues are not only entitled to a maritime lien, but are so far distinguishable from claims of material men for repairs and supplies furnished to the vessel that the lien is not subject to the limitation to foreign vessels imposed upon claims of the latter class under the general maritime law. That the lien exists for wharfage, if doubtful before, is settled by the decision in Ex parte Easton, 95 U. S. 68, 75, 24 L. Ed. 373; but the opinion is guarded in its application to foreign vessels, and

no distinction is there recognized from liens for repairs and supplies. On the other hand, decisions in the Second circuit, following the case of The Kate Tremaine, 5 Ben. 60, Fed. Cas. No. 7,622, place wharfage claims in a special class, and grant a lien as well against domestic vessels. The Scow No. 15, 35 C. C. A. 149, 92 Fed. 1010, and cases cited. Unless this exceptional rule is adopted here, it is manifest that no lien could arise in favor of the libelant's claim, for the reason that the port where the wharfage accrued was the place of residence of the charterers, making it the home port of the chartered vessel for the purposes of this inquiry, and thus excluding the claim from allowance as a maritime lien under the general doctrine in admiralty. The Valencia, 165 U. S. 264, 272, 17 Sup. Ct. 323, 41 L. Ed. 710; The Samuel Marshall, 6 U. S. App. 389, 394, 402, 4 C. C. A. 385, 54 Fed. 396. In the case at bar, however, it is unnecessary to consider the difficult question whether such lien may arise at the home port, if the essential facts do not appear to create the lien in either view. The fundamental requisite for the creation of this lien is a maritime claim contracted or incurred on the credit of the vessel, and not on the credit of the owner or other person in interest. In the absence of such credit in the transaction, express or implied, there is no hypothecation, but the credit to the vessel is implied when the obligation is incurred by the master under conditions otherwise authorizing the implied hypothecation. A contract of like nature made by the owner or charterer in person, not being master as well, stands on a different footing,—is presumptively made on the personal credit of the contracting party,—and, without proof of facts or circumstances to repel the presumption, no lien attaches. This rule was declared in the early case of The St. Jago de Cuba, 9 Wheat. 409, 417, 6 L. Ed. 122, and there has been no departure from it in subsequent cases. Like presumption of personal responsibility arises in the case of the charterer by whom all expenses of the vessel are assumed, and for stronger reasons, as exemplified in recent opinions. The Kate, 164 U. S. 458, 465, 470, 17 Sup. Ct. 135, 41 L. Ed. 512; The Valencia, 165 U. S. 264, 270, 272, 17 Sup. Ct. 323, 41 L. Ed. 710; The Samuel Marshall, 6 U. S. App. 389, 394, 401, 4 C. C. A. 385, 54 Fed. 396; The Stroma, 11 U. S. App. 673, 681, 682, 3 C. C. A. 530, 53 Fed. 281. It is true that these cases relate to coal and other supplies ordered by the charterer, but the rulings in reference to wharfage claims, as above cited, have effect merely to extend the lien to domestic vessels, while it is otherwise subject to all the conditions required for a lien for repairs or supplies, and so expressly held by the circuit court of appeals for the Second circuit in The Advance, 38 U. S. App. 197, 199, 18 C. C. A. 404, 71 Fed. 987. The testimony as to the arrangement by the charterer for rent of the wharf in suit fails to repel the presumption of personal credit, and, moreover, leaves no room for reasonable inference that a pledge of the credit of the steamer was contemplated. The libelant, if not informed of the fact or terms of the charter, was clearly put upon inquiry, under the circumstances disclosed. The opinions by Mr. Justice Harlan in The Kate, supra, and The Valencia, supra, seem to be substantially applicable here, and I am satisfied that the libelant fails to establish a lien against the

steamer. The Illinois statute which is cited, if otherwise operative. does not touch the case of an order by the charterer, and is not applicable. Accordingly the libel is dismissed.