## THE MUSKEGON.

### (District Court, S. D. New York. March 10, 1921.)

### No. 781.

**1. Maritime liens ⬤⟷21—Putative lienor not bound to inquire as to authority to bind ship.**

The putative lienor, under the Maritime Lien Act of 1910 (Comp. St. §§ 7783-7787), is not bound, whenever he gets an order to supply or serve the ship, to institute an inquiry as to the authority of the person by whom the supplies or services are ordered to bind the ship.

**2. Maritime liens ⬤⟷25—Services of master stevedore not "necessaries," within Maritime Lien Act of 1910.**

The services of a master stevedore are not "necessaries," within Maritime Lien Act of 1910 (Comp. St. §§ 7783-7787), providing for a lien for repairs, supplies, and other "necessaries" furnished to a vessel; the word "necessaries" having reference to the outfitting of the ship, as opposed to her carriage of freight.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries.]

In Admiralty. Libel in rem by master stevedores against the vessel Muskegon. Libel dismissed.

Decree affirmed 275 Fed. 348.

The libelants are master stevedores, and loaded the vessel Muskegon, in April and May, 1919, while in the port of New York. The Muskegon was registered in that port and owned by a New York corporation, and was under charter to the Caravel Steamship Lines, also a New York corporation, under a charter which required the charterers to pay all such charges. The loading was done under contract with the charterers, and there was no clear evidence that they made any representation as to its ownership, beyond saying that it was "our" ship. The contract was made before the ship arrived at the pier, and the libelants visited the cargo there laid out, and were told that, if the charterers were able to get the Muskegon, they would employ the libelants as stevedores. This was the extent of their knowledge that the ship was on charter. During the loading the master twice objected to the stowage, and called up the charterers, who directed the libelants to conform to his wishes. The charterers have become bankrupt, but before that time the libelants sent a bill to them, charged against "Muskegon and owner." Later they made claim against the owners personally.

E. Curtis Rouse, of New York City, for libelants.
Earle Farwell, of New York City, for claimant.

LEARNED HAND, District Judge (after stating the facts as above). [1] I shall assume, without deciding, that the libelants had no notice that the Muskegon was on charter. If so, they may recover, but only in case the Maritime Lien Act of 1910 (Comp. St. §§ 7783–7787) applies. The putative lienor is not bound, whenever he gets an order to supply or serve the ship, to institute an inquiry; else he would never be safe, and the act would be idle. The Yankee, 233 Fed. 919, 926, 147 C. C. A. 593; The Oceana, 244 Fed. 80, 83, 156 C. C. A. 508. Whether it is enough to charge the lienor with notice that he knows the ship to be on charter, and the order to come from the charterer, I need not say. The Yarmouth (C. C. A.) 262 Fed. 250; The

George Dumois, 68 Fed. 926, 15 C. C. A. 675. I agree that The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512, and The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710, do not rule that question.

[2] With this fact presupposed, the case raises squarely the question whether services of a master stevedore are "necessaries" within the act of 1910. He stands in a different position from the stevedore himself. He has no lien (The Seguranca [D. C.] 58 Fed. 908), as does the stevedore (The Harrie M. Bain [D. C.] 20 Fed. 389; The Main, 51 Fed. 954, 2 C. C. A. 569). He ranks with repairmen and suppliers of the ship, and must show that he gave credit to the ship, being entitled to the same presumptions. Norwegian S. S. Co. v. Washington, 57 Fed. 224, 6 C. C. A. 313; The Luckenbach, 212 Fed. 388, 129 C. C. A. 64. Yet a lien he may have for the rendition of the services, if the facts warrant the conclusion. In this respect he is quite in the same position as a tower, who may have a lien, and in foreign ports presumptively does have one. The J. Doherty (D. C.) 207 Fed. 997, 1001; The Hatteras, 255 Fed. 518, 166 C. C. A. 586; The Alligator, 161 Fed. 37, 88 C. C. A. 201.

If the act of 1910 was intended to establish rules of proof and procedure for all classes of maritime liens, both master stevedoring and towage liens would fall within it. As to master stevedoring, this has been decided by Judge Neterer in The Rupert City (D. C.) 213 Fed. 267–269, and as to towage, by the Circuit Court of Appeals of the Fifth Circuit in The Yarmouth, supra, 262 Fed. 257. The contrary was decided by Judge Veeder in The J. Doherty, supra, and The Hatteras, supra, and the last ruling is of course authoritative in this court. Moreover, Judge Veeder, in The Oceana (D. C.) 233 Fed. 139, appears to have ruled that the statute did not cover master stevedores, though that point was not presented on the appeal. 244 Fed. 80, 156 C. C. A. 508.

This being, for the present, anyway, the fixed law, it seems to me clear that the master stevedore's lien is in the same class as towage, and that in this circuit the act of 1910 includes neither, whatever may be the rule in the Fifth or the Ninth. The reason why the act has been thought to exclude towage is that the word "necessaries" is to be read ejusdem generis, and includes only the outfitting of the ship, as opposed to her carriage of freight. For this reason the statute did not affect all maritime liens, but only those which were related in kind to repairs and supplies, except as specifically added. But stowage is as little akin to repairs and supplies as towage. Each is a part of the earning of freight; properly each is a part of the carriage, for the ship must lift her cargo before she can carry it. Hence, if towage is not ejusdem generis with repairs and supplies, I can see no rational distinction between it and stowage or discharge. It must result, therefore, that liens for these remain as they were, unaffected by the act of 1910, and that there was no lien here, since the ship was in her home port.

Whether any of the language of Piedmont Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 11, 41 Sup. Ct. 1, 65 L. Ed. ——, will be thought to change the ruling in The Hatteras, supra, is not for me

to say. It is at best doubtful, for the case was very different. If it be eventually settled that the act of 1910 covers all kinds of liens for work or materials, then of course I shall be wrong; but for the present I have only to apply the rule as I find it, and I can see no distinction between the case at bar and The Hatteras, supra, which would leave possible an intelligible rule for general application.

The libel is dismissed, with costs.