## MURRAY v. GEORGE W. JUMP CO.

(District Court, S. D. New York. June 12, 1906.)

1. SHIPPING—ACTION FOR FREIGHT—QUANTITY OF LUMBER CARGO.

An estimate of the quantity of lumber in a cargo, based on the carrying capacity of the vessel, should not be accepted in an action for the freight as against what appears to have been a reasonably accurate tally, made when the lumber was loaded; but such tally may be corrected by evidence that the shipper received a greater quantity from the vessel at the place of delivery.

2. SAME—DELAY IN RECEIVING CARGO—LIABILITY FOR EXPENSES OF SHIPPER.

Where libelant, after agreeing to furnish a vessel to transport a cargo of lumber in the harbor of New York, but without any definite contract as to time, was delayed in procuring a vessel, but respondent, having failed to secure one elsewhere, accepted libelant's when tendered, libelant cannot be held liable for expenses incurred by respondent in consequence of the delay.

3. SAME—DEMURRAGE.

The claim of a boat owner for demurrage on account of delay in discharging disallowed, where it appeared that he could have secured quick discharge by moving to a different location in the same yard.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 576–581.

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

4. SAME.

A boat owner is not entitled to demurrage for the time during which he refused to continue unloading because of the pendency of negotiations for security for the freight, where he might have discharged, and preserved his lien on the cargo by refusing to deliver.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 587, 588.]

In Admiralty. Suit for freight and demurrage.

Hyland & Zabriskie, for libellant.

Louis H. Reynolds, for respondent.

ADAMS, District Judge. This action is to recover the freight on 180,000 feet of lumber from 98th Street, East River, to the foot of Noble Street, Brooklyn.

There is no dispute that the rate was $1.00 per thousand but a controversy has arisen as to the quantity transported, the libellant basing

his claim on an estimate founded upon the usual capacity of the vessel and the respondent relying upon a tally of the lumber made at the place of shipment. While there is much to support the libellant's estimate, I do not think it should be permitted to prevail against a reasonably accurate tally, which the testimony tends to show was made by the respondent and the auctioneer at the yard. The auctioneer's tallies were not complete but there was no difference between them and the respondent's so far as they went and after the auctioneer's clerks ceased making tallies, because of the necessity for vacating the premises, the respondent's clerks, who had verified the auctioneer's up to that point, went on and completed the tally of the lumber that went on the boat. Their statements showed that the quantity on board of the boat was 130,796 feet and that is the quantity that should be paid for. Doubtless the discrepancy between the libellant's estimate and the respondent's tally is accounted for by the kind of lumber that the cargo consisted of, it being cut up into small and irregular pieces, which would occupy more space than uniform pieces.

Another disputed question is as to whether the libellant by delay in sending his boat to receive the lumber rendered himself liable for certain expenses said to have been incurred by the respondent. The testimony does not satisfy me that any such definite arrangement was made as to warrant allowing the respondent to recover damages for delay. There was a scarcity of boats in the harbor and the libellant sent about the harbor to obtain one as soon as practicable. The respondent was by the efforts of its manager unable to secure any other boat and returned to the libellant and accepted his boat at the time he tendered it. I do not see how any damages could be properly allowed against him under the circumstances.

Another disputed question is as to what occurred when the boat reached the respondent's yard in Brooklyn. It appears that the libellant could have secured an earlier delivery of the lumber by taking his boat to other places at the yard where similar boats went and secured quick discharge.

Another claim is that the discharge was interrupted and ceased for several days while parties were negotiating about security for the libellant's freight. For this detention of the boat, he claims demurrage. He was entitled to a lien on the lumber for his proper charges for transporting it but it does not appear that there was any necessity for resorting to it as the respondent was apparently amply responsible. Instead of delaying for several days, while the matter of security was being arranged, he could have put the lumber ashore but refuse delivery and thus secured himself for any proper charges he might have. He could not properly make his boat a warehouse for the purpose and thus collect hire while waiting under the guise of demurrage. I therefore hold that the claim for demurrage should be rejected.

### Additional Opinion.

The foregoing was prepared at the expiration of the trial, April 6, 1906, and it only remains to consider the additional evidence adduced by the libellant with respect to the quantity of lumber on the boat. As appears above, the probable amount was in excess of the tallies made

by the respondent but it was not allowed because the tallies were the best evidence then before the court. Since that time, however, the libellant has caused the production of a paper by the respondent, which shows that it received 170,192 feet through the boat. The further testimony with respect to an additional quantity is made of estimates and computations based thereon and can not be considered. The libellant, however, has established the quantity of 170,192 feet transported and is entitled to recover on that amount. Otherwise the decision will stand as originally made.