### HAGAN et al. v. CARGO OF LUMBER.

(District Court, E. D. New York. August 6, 1908.)

1. SHIPPING—DEMURRAGE.

Demurrage cannot be recovered from a charterer for delay in discharging, due to the refusal of the owner to discharge without settlement of a prior claim for demurrage at the port of loading.

[Ed. Note.—Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Smith, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

2. SAME.

Under a charter for the carriage of a cargo of lumber to be loaded at two ports, which required the charterer to pay for the towage between the two, the time of such towage cannot be charged in the lay days for loading, nor the time lost in obtaining a tug not due to any default of the charterer; but demurrage is recoverable for delay in loading, due to the fact that the cargo was different from that specified in the charter.

3. SAME—DEAD FREIGHT—SUIT IN REM.

A claim for dead freight is not recoverable in an action in rem against the cargo.

4. SAME—EXTRA COST OF HANDLING CARGO.

A claim by a vessel owner for the extra cost of handling timber of larger dimensions than that specified in the charter can only be recovered in an action in rem against the cargo in so far as it is a claim for the services of stevedores who would be entitled to a lien, and is not so recoverable where the stevedores were furnished by the charterer.

In Admiralty.

James J. Macklin, for libelants.
Hyland & Zabriskie, for claimant.

163 F.—42

CHATFIELD, District Judge. The libelant has sued for four different sets of items arising out of a charter party to secure the services of the schooner Berks in bringing a cargo of lumber from Virginia to New York. The charter party is substantially as follows:

Under date of April 20, 1906, the owners of the barge Berks agreed with the Southern Pine Timber Company to make a voyage from Norfolk and Windsow Shades, Va., to New York, for which the party of the second part agreed to furnish a cargo of "air-dried pine boards and Virginia pine framing," and to pay $3 per 1,000 feet, with free wharfage and shifting towage, if any; barge to be towed from Norfolk, Va., to Windsow Shades, and back to Norfolk, Va., at expense of charterers; on loading and discharging, Sundays, holidays, and rainy days to be excepted; lay days to commence 24 hours from the time the vessel was ready to receive or discharge; cargo to be loaded as per usual custom for loading at Norfolk and Windsow Shades, and to be discharged as per rules of the New York Maritime Exchange, with a default of $30 per day; cargo to be received and delivered alongside within reach of vessel's tackle; lumber to be delivered on rail of barge; owners guarantee barge to insure at current rate, etc.

It appears from the testimony that part of the lumber was Virginia pine boards, and some Virginia pine framing of the ordinary character; but, in addition to this lumber, a large quantity of long and heavy timber of green Virginia pine, of sizes 8"x10"x16' and intended to supply a contract for underpinning, to be used in building the Brooklyn Subway, was delivered to the vessel. Such timber, the testimony shows, was of unusual dimensions, was designed for a special purpose, and could not be called "framing," in the ordinary meaning of that term. Considerable of the delay occasioned in loading was caused by the character of this heavy timber, and this fact must be considered later.

The four claims or causes of action are as follows: First, 16 days' alleged demurrage at the shipping port at $30 a day, or $480 in all; second, a claim for dead freight, arising from the difference between the amount of freight charges for the quantity of ordinary framing which could be carried, and the amount, according to measurement, of the heavy timber above specified (this difference is stated to amount to $400); third, the extra expense to which the vessel is claimed to have been put in loading and discharging this heavy timber (this item is also claimed to amount to $400); fourth, an alleged detention at New York of 30 days, which at $30 a day demurrage would amount to $900.

Taking up the last claim first, it would appear that under the rules of the New York Maritime Exchange the only days for which demurrage can be charged were three days at Smith's Dock, Newtown creek, during which days another schooner was lying at the berth. One of these days was the 4th of July, and therefore but two days' demurrage can be allowed. The other delay at the port of New York would seem to have been occasioned by an attempt on the part of the libelant to compel the allowance of his claim for demurrage at the

port of loading, and this cannot be made a basis of damage. Murray v. George W. Jump Co. (D. C.) 148 Fed. 123.

As to the first item of demurrage, the libelant has claimed that the cargo was not furnished to him at Norfolk as fast as the contract called for, that he was compelled to wait for a tug to go to Windsow Shades, and in going to Windsow Shades and Norfolk, and in delay at Windsow Shades in obtaining stevedores. The time of going to Windsow Shades and getting back to Norfolk cannot be considered in computing demurrage. It was a part of the contract to take the load at each of these places, and the time in going to Windsow Shades and returning therefrom was, therefore, contemplated as a part of the contract. The delay in obtaining a tug was not the fault of the party of the second part. The agreement was to pay for towage, and this did not include an agreement to furnish towage. Barrett v. Oregon Ry. & Nav. Co. (D. C.) 22 Fed. 452. There would seem to have been at Norfolk a delay chargeable to the party of the second part of two out of three days, May 19th, 22d, and 23d, on which but one car load a day was furnished to the vessel. At Windsow Shades one day was lost in obtaining stevedores, because of the character of the timber, and for this day the party of the second part should be held responsible. As to the delay in the actual time of loading at Windsow Shades, no allowance can be made. The stevedores were ultimately furnished by the party of the second part, who was supplying the timber, and no charge is made therefor, and the acceptance of this service by the libelant would seem to absolve him from damage for the extra time consumed. Therefore but three days demurrage should be allowed at Norfolk and Windsow Shades, amounting to $90.

As to the second alleged cause of action, the claim for dead freight is not properly the basis of an action in rem, but is a claim for damages, and must be disallowed.

The third alleged cause of action, as to extra cost in handling the heavy timber, can only be made the basis of an action in rem in so far as it is a claim for stevedores' services. The Hattie Thomas (D. C.) 59 Fed. 297; The Seguranca (D. C.) 58 Fed. 908. But this claim was a lien against the cargo itself in favor of the stevedores, and, inasmuch as the stevedores were furnished by the company offering the timber, no extra expense therefor paid by the libelant has been proved.

The libelant, therefore, may have a decree for $90 demurrage at Norfolk and Windsow Shades, and $60 demurrage at New York. As to the balance of his claim the libel must be dismissed.